UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT | : |
| VS. | :      NO.  3:03CV80(AVC) |
| ACCENTURE, LLP | :      MARCH 29, 2004 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     BACKGROUND**

Todd Bennett is a thirty-four year old computer consultant who worked at Accenture from 1992 until April, 1997.  In early 1997,  he began to have difficulty performing his job; he experienced  problems with concentration, problem solving, reading, talking and writing.  He had physical symptoms of weakness, difficulty with coordination, and excessive fatigue. One of his physicians,  Dr. Mark Josel,  finally diagnosed the problem as copper toxicity from well water in early 1998.  The plaintiff's copper level was originally as high as 950; normal levels are 2-30.  (Ex. 9)  The plaintiff had lived for twenty (20) years within five (5) miles of two copper mines in East Granby, Connecticut.  (Ex. 9) As of April, 1997, he stopped work, and he began receiving long term disability benefits through his employer's plan with Aetna Life Insurance Company  as of July, 1997.  His supervisor at Accenture described his attitude and motivation prior to

that time as extremely positive and advised Aetna that Mr. Bennett's reviews had been consistently "outstanding". (Ex. 1)

After several years of diagnosis, treatment, and recovery, in early 2001, Mr. Bennett notified Michelle Holt at Accenture that he could return to work on a part-time basis. Dr. Geoffrey Kaplan, of Gaylord Rehabilitation Hospital, advised both Accenture and the LTD carrier, Aetna Life Insurance Company, that Mr. Bennett could return to part-time work for twelve (12) hours a week, preferably on a Monday, Wednesday, Friday schedule. ( Ex. 3)

Mr. Bennett's job prior to his disability had required him to supervise a team of programmers and computer specialists to develop customized computer network solutions for various corporate clients of Accenture. The nature of the work involved designing, building and testing business computer systems. (Ex. 1) Eight months after his initial inquiry about returning to work on a part-time basis, as of August, 2001, Accenture had not yet offered him any work. Return to work did not require filling an open position, since Mr. Bennett could have simply assisted other personnel and reduced their overtime hours. Messages sent by e-mail between Accenture managers and Aetna in July and August, 2001, indicate that Accenture was considering simply terminating Mr. Bennett, but they were concerned about the relationship between the benefits available under the Aetna policy and their planned personnel action. (Ex. 8)

In the fall of 2001, after contacting the defendant repeatedly for seven months, the plaintiff took part-time work with Bennett Avionics, a business owned by his father. He was trained in the business of marketing and selling airplane technological equipment. He was paid on a commission only basis at the firm. (Ex. 7, Pl. Affidavit, §1)

Accenture advised the plaintiff informally in November, 2001, that they were planning to terminate him; his formal termination date was May 30, 2002. He was not offered severance and he received no severance, although he was no longer receiving LTD benefits as of the spring of 2002 and was therefore a candidate for severance if his termination was part of a reduction in force. (Ex.7, Pl. Aff. § 14, Ex. 13, Separation Benefits Plan, p. 1-3)

As of this date, March, 2004, the plaintiff continues to work on a part-time basis, for approximately twenty (20) hours per week at Bennett Avionics.

## II.     STANDARD FOR SUMMARY JUDGMENT

When passing upon a motion for summary judgment, the district may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Tenenbum v. Williams, 193 F. 3d 581, 593 (2d Cir. 1999), cert. denied, 529 U. S. 1098 (2000).

The evidence of the party against whom summary judgment is sought must be accepted as true. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

    To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

    "A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law....The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion....A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000).

**III.    ARGUMENT**

    A.  STATUTE OF LIMITATIONS

There was no adverse employment action taken against the plaintiff until he received formal notice of his termination on February 6, 2002. (Ex. 10)  He was advised informally by Michele Holt, on November 8, 2001, that his employment would have to be terminated because Accenture had not been able to locate a position for him. (Ex. 12, p. 138)   If the Court chooses  November 8, 2001 as the adverse employment action date, Todd Bennett filed his CHRO claim within the 180 day  limit, on May 6, 2002. (Ex 11, CHRO complaint) Plaintiff would argue that his claim was not ripe until he received the letter from Michele Holt on February 6, 2002; she advised Mr. Bennett that Accenture would not accommodate with part-time employment and would terminate him. (Ex. 10) In any case, his administrative complaint to the Commission on Human Rights and Opportunities was filed well within the six month, 180 day limit, on May 6, 2002.  ( Ex. 11)

    B.   PRIMA FACIE CASE

"In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.

5

1994), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).[1]

The plaintiff must show that: (i) he is a member of a protected class; (ii) he was qualified for the position; (iii) the defendant took adverse action against him; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.).

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' Burdine, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is de minimis." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence. See Rosen v.

---

[1] A plaintiff need not necessarily prove a *prima facie* case to prevail, however. "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002).

Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.')."  Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997).  Often, "[w]hat is most revealing of the true intention behind the [adverse employment action] is the timing."  Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

"[T]he prima facie case...includes a showing that the plaintiff was 'qualified' for the position."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  "To satisfy the second element of the test, [the plaintiff] need...only demonstrate that he 'possesses the basic skills necessary for performance of [the] job.'"  De La Cruz v. New York City Human Resources Administration Department of Social Services, 82 F.3d 16, 19 (2d Cir. 1996).  Citing Powell v. Syracuse University, 580 F.2d 1150, 1155 (2d Cir.), cert. denied, 439 U.S. 984 (1978); Owens v. New York City Housing Authority, 934 F.2d 405, 409 (2d Cir.), cert. denied, 502 U.S. 964 (1991).

The employer, of course, may seek to rebut the prima facie case by proof of a legitimate nondiscriminatory reason for the adverse employment action.  "Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can

7

reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the fact-finder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992).  "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

     Like all other aspects of an employment discrimination case, the falsity of the employer's asserted legitimate nondiscriminatory reasons for its actions may be inferred from circumstantial evidence.  See Robertson v. Sikorsky Aircraft Corp., 258 F. Supp. 2d 33 (D. Conn. 2003) (Goettel, J.).

     The courts will be very reluctant to grant summary judgment in favor of an employer in any employment discrimination case "when, as here, the employer's intent is at issue."  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2nd Cir. 1998).

The plaintiff was disabled as of the spring of 2001 and the defendant has not disputed this. He had been released by his physicians to work on a part-time basis only. As of March, 2001, he was permitted to work four (4) hours a day for three days a week. (Ex. 3)

He was qualified to perform the essential functions of the job; he was certainly qualified to work at Accenture. The defendant was not required to offer him the identical position he had previously performed at the company. This firm, which prides itself on its ability to recommend flexible, creative business solutions for other companies throughout the world, was unable to identify part-time work for one of its employees from March, 2001 through June, 2002. This occurred although the defendant itself states that its professional employees are frequently required to work over-time on projects. (See, Defendant's Rule 56 Statement, §10-11). The defendant could simply have utilized the plaintiff to reduce the overtime expense for its consulting staff, but it chose not to do so. If the defendant had taken this option, presumably the productivity and quality of the firm's work would have been enhanced, and it would have cost the firm nothing.

Mr. Bennett's skills could also have been applied in other positions. For example, he could have worked in the following areas:

-liaison with a technology vender;

9

-manage a project issue log or SIR (Systems Investigation Request) log;

-research industry best practices and new technology solutions, which were stored on the "Accenture Knowledge Exchange";

-develop contract proposals;

-work on internal Information Technology projects, network administration, computer rollout, standards development;

-code reviews: examining the programming code on a project for appropriate design logic and adherence to standards;

-prototyping: develop a prototype application to prove a particular development method and create documentation to guide the rest of the development team through the process;

-develop presentations for projects andoffice meetings;

-work on internal projects, such as the quality management program;

-assist on project budgeting and financial administration. (Ex. 7)

The plaintiff, in the spring of 2001, had the ability to do the job, initiative, self-confidence, leadership skills, proven compatibility, a positive attitude, social skills, empathy, and integrity.  The defendant failed to find a part-time position for him.

Accenture has the burden to establish that providing a part-time position to the plaintiff would have caused it undue hardship.  It cannot do this because of

the evidence concerning substantial over-time obligations of the professional employees. The defendant's burden cannot be satisfied by affidavits from employees with conclusory statements and no factual basis. The defendant specifically refused to provide any details concerning its staff reductions in Connecticut when this information was requested by the plaintiff. (Ex. 5, Response to No. 5) The defendant could easily have provided the limited basic information sought by the plaintiff; the number of positions cut and the titles of the positions, without violating any confidentiality obligations to its former employees. But the defendant chose not to do so. The court is permitted to draw an adverse inference from this failure by the defendant.

**IV.    CONCLUSION**

      Wherefore, for the reasons set forth above, the plaintiff respectfully requests that the Court deny the defendant's Motion for Summary Judgment.

THE PLAINTIFF

BY:_____
KATRENA ENGSTROM
Federal Bar No. ct09444
51 Elm Street
New Haven, CT 06510

                (203)562-9931
                FAX: (203)776-9494
                E-Mail: kengstrom@johnrwilliams.com
                His Attorney

**CERTIFICATION**

A copy of the foregoing was mailed, first class, on the date set forth above, to the following counsel:

Damian W. Wilmot, Esq.
Seyfarth Shaw
Two Seaport Lane, Suite 300
Boston, MA 02110

Douglas Varga, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
Bridgeport, CT 06604

_____
KATRENA ENGSTROM