EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT, )<br><br>Plaintiff, )<br><br>v. )<br><br>ACCENTURE LLP, )<br><br>Defendant. ) | Civil Action No. 3:03CV0080 AVC<br><br>January 5, 2004 |

## ACCENTURE LLP 'S ANSWERS TO
## PLAINTIFF'S INTERROGATORIES TO DEFENDANT

Pursuant to Fed. R. Civ. P. 33, Accenture LLP ("Defendant" or "Accenture") answers

and objects as follows to Plaintiff Todd Bennett's ("Plaintiff" or "Mr. Bennett" herein)

Interrogatories to Defendant. Accenture states that as it has not yet completed discovery in this

case, it can answer these interrogatories only on the basis of the information known to it at this

time. Accenture further states these answers represent a corporate response verified by an

authorized agent of Accenture, as set forth below. Accenture reserves the right to supplement

these answers.

## GENERAL OBJECTIONS

1.     Accenture objects to any interrogatory to the extent they seek information

protected from disclosure by the attorney-client privilege or the work product doctrine or that

otherwise is not discoverable, and Accenture will not provide such information in answering the

Interrogatories.

.2.     Accenture objects to all instructions and definitions to the extent they purport to

require Accenture to respond in a manner not required by Fed. R. Civ. P. 26 or Fed. R. Civ. P.

## INTERROGATORY NO. 4

Please identify how many employees of Accenture, based in Connecticut as of January, 2002, were terminated as a result of a "reduction in force" between January and July 1, 2002.

## RESPONSE NO. 4

Accenture objects to this interrogatory on the grounds that it overbroad and unduly burdensome, it seeks information which is irrelevant and immaterial to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Complaint purports to state claims for handicap discrimination only. As a result, Plaintiff is not entitled to information regarding individuals, alleged incidents, policies, procedures, data, or activity outside of that construct. Accenture further objects to providing the requested information on the grounds of employee confidentiality. Based on foregoing and General Objections, Accenture declines to produce any information relating to individuals other than plaintiff.

## INTERROGATORY NO. 5

For each employee terminated, please provide job title, length of service, and status (i.e., active, out on personal leave, out on disability, etc.). For purposes of confidentiality, a code may be substituted for the employee's name.

## RESPONSE NO. 5

Accenture objects to this interrogatory on the grounds that it overbroad and unduly burdensome, it seeks confidential information and information which is irrelevant and immaterial to this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Complaint purports to state claims for handicap discrimination only. As a result, Plaintiff is not entitled to information regarding individuals, alleged incidents, policies,

procedures, data, or activity outside of that construct. Accenture further objects to providing the requested information on the grounds of employee confidentiality. Based on foregoing and General Objections, Accenture declines to produce any information relating to individuals other than plaintiff.

## INTERROGATORY NO. 6

What was the severance package provided to the employees described in Interrogatories No. 4 and 5? Please describe.

## RESPONSE NO. 6

Accenture objects to this interrogatory on the grounds that it overbroad and unduly burdensome, it seeks information which is irrelevant and immaterial to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Complaint purports to state claims for handicap discrimination only. As a result, Plaintiff is not entitled to confidential, proprietary information regarding individuals, alleged incidents, policies, procedures, data, or activity outside of that construct. Accenture further objects to providing the requested information on the grounds of employee confidentiality. Based on foregoing and General Objections, Accenture declines to produce any information relating to individuals other than plaintiff.

Dated: January 5, 2004

SEYFARTH SHAW LLP

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY TO THE BEST OF MY KNOWLEDGE THIS 5th DAY OF JANUARY, 2004.

Toni L. Corban
Accenture LLP

7

SEYFARTH SHAW LLP
As to Objections:

Lynn A. Kappelman (ct03480)
Daniel Klein (ct 18934)
Damian W. Wilmot (ct22694)
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800

Attorneys for Defendant
ACCENTURE LLP

Dated: January 5, 2004

DEFENDANT'S LOCAL COUNSEL
Douglas Varga, Esq.
**ZELDES, NEEDLE & COOPER**
1000 Lafayette Blvd.
Bridgeport, CT 06604
(203) 333-9441
fax (203) 333-1489

<u>CERTIFICATION</u>

I, Damian W. Wilmot, hereby certify that on January 5, 2004, a copy of the foregoing document was mailed to the following counsel of record, overnight mail, postage prepaid:

John R. Williams, Esq.
Williams & Pattis LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Damian W. Wilmot

**EXHIBIT 7**

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

TODD BENNETT                                    :

VS.                                             :        NO.  3:03CV80(AVC)

ACCENTURE, LLP                                  :        MARCH 29, 2004

COUNTY OF HARTFORD

TOWN OF GRANBY

## AFFIDAVIT OF TODD BENNETT

1.  I am over the age of eighteen (18) and I understand the obligations of an oath.

2.  I am currently employed on a part-time basis (twenty-twenty five hours/ week) with Bennett Avionics, a firm which supplies used avionics for General Aviation aircraft.  My compensation is based on sales commissions, plus rent for my home office.

3.  As a consultant, I was compensated for my overtime work at Accenture.  We frequently were required to work more than the usual 40 hour work schedule: for the first 80 hours I received compensatory time.  When my overtime during a particular year exceeded 80 hours, I received "straight time" additional compensation.  Every employee that I ever talked with filled this 80 hour "bank" every year.  This means that employees working overtime were paid by Accenture at a straight time rate.  It would have cost the same amount for me to assist another employee and reduce the overtime worked.  This would also have improved productivity by reducing the fatigue common among Accenture employees.

4.  The defendant's statement that my skills are outdated is a red herring.  It is true that I did not have hands-on experience with some of the technology used by Accenture as of the spring of 2001, but in my last project, I was two levels removed from hands-on technology use.  I supervised team leaders, who supervised the people who were deeply involved with the technology. Inter-personal skills, project management skills and computer system testing were the most important elements of my job.

5. In their affidavits, employees of the defendant omit the importance of transferable skills in Accenture's management consulting practice (e.g. project management, analysis, supervision) which the firm emphasized as one of their selling points to clients. They hired and promoted me because I have those skills.

6. Whenever a consultant is assigned to a new project, there is always a great deal to learn, including new technology and its application. Accenture excels at getting smart people up to speed quickly, through their training, documentation, and consistency standards. This is the basis for their entire business model. Given the opportunity, I would have come up to speed quickly, as I had many times before.

7. The key technologies used on my last project (Oracle and FileNet), were the same technologies being used in Government projects and proposals when I was ready to return to work from 2001-2002.

8. The defendant stated that no suitable position could be found for me. More than anything else, Accenture is known for its ability to solve problems. By applying this ability with any creativity at all, the following positions would be a likely match for my needs at the time. This is especially true with the ability to perform work remotely, given e-mail, the internet, faxes, and teleconferencing, for example:

   • Assist another consultant working chronic overtime; (As mentioned above, this would not have imposed additional costs.)

   • Job share with someone else coming back from disability or maternity;

   • Manage the relationship between a project (or Accenture) and a technology vender, as I did with FileNet on the VISTA project;

   • Manage a project issue log or a SIR (Systems Investigation Request) log, as I did on the VISTA project;

   • Research industry best practices, new technology solutions, add to the Accenture Knowledge Exchange; (The Knowledge Exchange is Accenture's online database designed to share information and experiences, with the goal of making thousands of consultants more productive.)

   • Develop proposals; Surely if the company was in such bad financial shape in 2001-2002 as claimed, they were making efforts to earn new business. They need people to produce these proposals, and I have experience doing so.

- Perform internal IT projects, such as network administration, computer rollout, standards development;

- Assist with staffing, recruiting, training (for example, re-integration of employees who have been temporarily out of the work force due to illness, injury, or some other type of absence –maternity, family leave);

- Perform Code Reviews, which is examining the programming code on a project for proper design logic and adherence to standards;

- Develop a prototype or proof of concept; Many large products develop a "prototype" application to prove the development method / tools and create documentation to guide the rest of the development team through the process. (I had done this on the CAPS project);

- Develop presentations to be used for projects, office meetings, etc.;

- Work on Internal projects, such as the quality management program, or the client satisfaction survey;

- Perform budgeting / financials for projects.


9.  Any of these functions could be performed on a part-time basis. Ability to travel outside of the state was not essential to any of these examples. If Accenture was only looking for positions for a Full Time Equivalent (FTE), then by definition they were not going to find a position for me.

10. I had multiple client assignments in the Communications, Financial Services and Government areas. As a member of the "Technology Competency" group, my focus was the effective application of technology and less on the underlying industry. This should have opened up additional possibilities not available to someone who was "pigeon-holed" in one industry.

11. Accenture claims that because I was not assigned to a Market Unit, it was more difficult to locate a position for me. This does not make sense for two reasons. As mentioned above, this should have opened additional possibilities. Plus, how are new employees (with no experience in any Market Unit) assigned? There has to be a process to make this decision.

12. At Accenture, employees are sometimes assigned to work part-time on multiple projects, i.e. their time is broken up among projects. In this type of environment, it should not be difficult to locate part-time assignments for an employee who is returning from leave. All work (at least at my level and below) is sold, planned, performed, and compensated on an hourly basis.

13. There was no particular business reason for Accenture to terminate me since I was not receiving any salary or any benefits.

14. The defendant claims that I was not re-instated, and I was terminated, because of a reduction in force. The defendant's failure to pay severance is another example of their discriminatory treatment of me. I was never offered any severance package. Under the defendant's "Separation Policy", employees who are receiving LTD benefits at the time of termination are not eligible for severance. However, I was no longer receiving LTD when I was terminated by the defendant, and yet, I received no severance. (Ex. 12, Separation Policy, p. 2)


_____
TODD BENNETT


_____
NOTARY PUBLIC

MICHAEL J. KEATING
NOTARY PUBLIC
MY COMMISSION EXPIRES

25 Mar, 2004

**EXHIBIT 8**

week.

Thank you,
Toni

Toni L. Corban
Accenture
US Personnel Matters - Employee Relations
Florham Park Office, 301/1350, Direct: (973) 301-1350
AIM - TLCorban


----- Forwarded by Toni L. Corban on 08/21/2001 02:12 PM -----

Toni L. Corban

08/16/2001 04:36 PM
To:    Peter C. Zackrison@Accenture
cc:    Yvette M. Molina@Accenture
Subject:    LTD Question


Hi Peter. Hope you are doing well. I have a situation with an individual, Todd Bennett, SS # 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. He has been on LTD since July 6, 1997 and has advised us in March that his doctor has released him to return to work on a limited basis, three hours per day, three days per week until re-evaluated. Because when Todd went on LTD we were PVC office based, he does not have a Market Unit that owns him. Our Hartford EEO Officer, Michele Holt has been working since March to locate a MU to transfer Todd into. Unfortunately, we have not been able to find a place for Todd in the Market Unit after trying for the last 6 months. Since we cannot locate a position for Todd within Accenture, we are planning to terminate his employment. Since he has already been approved for LTD and has been on it for a while, how would us terminating him impact his benefits? He has been released to return to work on a limited basis and since the firm cannot locate a position, how would Aetna handle this? Would he return to his 100% LTD benefits he was receiving?

AUG 2   2001

We are would like to understand all angles before making this decision.

Thank you for your assistance.

Toni


This message is for the designated recipient only and may contain privileged or confidential information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

AETNA 147

## Seccombe, Robert

*Carrie 4p*

*Todd Bennett   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*

| | |
|---|---|
| **From:** | Seccombe, Robert |
| **Sent:** | Wednesday, August 22, 2001 1:12 PM |
| **To:** | 'peter.c.zackrison@accenture.com' |
| **Cc:** | toni.l.corban@accenture.com; yvette.m.molina@accenture.com; Evans, Michael; Hollworth, Tad |
| **Subject:** | RE: LTD Question |

Mr. Bennett continues receiving his full long term disability benefits. Although the medical information indicates he may be capable of part time work he has not resumed work on a part time basis and is therefore eligible to continue to receive his full benefit.

-----Original Message-----
From: peter.c.zackrison@accenture.com
[mailto:peter.c.zackrison@accenture.com]
Sent: Wednesday, August 22, 2001 11:00 AM
To: Seccombe, Robert; Hollworth, Tad
Cc: toni.l.corban@accenture.com; yvette.m.molina@accenture.com
Subject: Re: LTD Question

Bob/Tad-can you tell us the LTD status of Todd Bennett (SSN# 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). Specifically, is he on full disability, partial disability or off LTD benefits altogether. Also, any history of when he made the status changes would be helpful. Thanks.

*AUG 2  2001*

Peter C. Zackrison
Accenture
U.S. Benefits
69-31619 312-693-1619
peter.c.zackrison@accenture.com

----- Forwarded by Peter C. Zackrison on 08/22/2001 09:43 AM -----

Peter C. Zackrison
                    To:    Toni L. Corban@Accenture
08/21/2001 04:16 PM    cc:    Peter C. Zackrison@Accenture, Yvette M. Molina@Accenture
                    Subject:    Re:  LTD Question

I would want to check with Aetna on Todd's status. It sounds like he would be on partial disability rather than total disability but not off LTD benefits altogether. Todd's relationship with Aetna is based on an LTD contract and is not affected by his employment status with Accenture. While I check on that-I would talk to Mary Fulton/Kathy Gallo on their views about how to terminate someone who is still partially disabled.

Peter C. Zackrison
Accenture
U.S. Benefits
69-31619 312-693-1619

AETNA  143

1

EXHIBIT 9

## Medical Consult Response

| | |
|---|---|
| Claimant Name: Todd Bennett<br>D.O.B. May 9, 1970 | Claim No./SS# 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 |
| Referred By: Carrie Jo Peters | Aetna Life Insurance Co. |

**Consultant's Response:**

Medial consultant is asked to evaluate physical capacities.

Date of disability is April 4, 1997 and "transition date" is April 3, 2002.

The claimant is a 30-year-old male who worked as an Engineering Consultant. It is unsure if he had contact with volatile metals such as copper, which would increase his urine levels and the basis for which he was adjudged disabled.

He states, "he thinks his high blood copper levels started at home in Connecticut, in his consumption of well water."

Nevertheless in the course of a diagnostic work-up his urine copper levels were found to be gradually climbing (normal being 2-30). His levels were as high as 950, and dropped eventually after Chelation treatment with EDTA to normal i.e., 8. A liver biopsy at the University of Michigan reportedly revealed a fatty liver, but there is no report as to whether traces of copper were found in the liver.

His serum ceruloplasmin level was normal, tending to rule out a congenital Wilson Disease.

The basis for which the claimant was originally allowed was "copper toxicity," which proportedly resulted in excessive fatigue and impairment of cognitive abilities.

On March 25, 1998, Dr. Mark Josel felt strongly the claimant had copper toxicity, "based on the rising urinary copper levels and recommended the Chelation which was done. The level then dropped to normal.

His April 1998 physical exam was normal short of the claimant's subjective complaints of severe fatigue.

Dr. Robban Sina (April 1997) opined the claimant was unable to perform his occupation because of his severe fatigue and his gradually increasing cognitive dysfunction. This was manifest by short attention span, inability to correlate data, etc., and was thought to be a direct effect of the "copper toxicity."

After his exam on July 21, 1997, Dr. Murray Welldner recommends no physical restrictions.

Exhibit 10

February 6, 2002

Todd A. Bennett
77 Harmony Hill Road
Granby, CT 06035

Dear Todd:

As we discussed during our conversation on November 8, 2001, after several attempts to locate you a position within Accenture, we have been unsuccessful. As a result, Accenture will be terminating your employment and are in the process of determining your last day with the firm.

As you requested, we are providing a copy of:

- Your personnel file; and
- A How Termination Affects your Benefits document

Regarding your other requests:

- RSUs - We are waiting for clarification for the Global Share Plan Group.
- 401K Summary Plan - a copy was sent to you under separate cover from US Benefits.
- Your request for information regarding LTD benefit's impact by termination – You can discuss this with your Aetna Representative, Bob Secommbe. Bob can be reached at (860) 952-2089.
- Your Unemployment Notice – this document will be sent from the Accenture Payroll Center under separate cover after your termination has been processed.

Please call me if you have additional questions.

Sincerely,

**Accenture 0002**

Michele B. Holt
Human Resources

**EXHIBIT 11**

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

DATE: May 3, 2002

CASE NO. 0240468

My name is Todd Bennett and I reside at 77 Harmony Hill Road, Granby, CT 06035.

The respondent is Accenture LLP, whose business address is One Financial Plaza, Hartford, CT 06103-2699.

I was
(X) discharged due to disability
(X) not reinstated due to a disability

effective on a date not yet determined, but of which I was first notified on November 8, 2001, and believe that my:

(X) physical disability

was in part a factor in this action. I believe that the respondent violated the following Connecticut General Statutes Sections enforced through Section 46a-58(a) and acts listed below:

(X) 46a-60(a)(1)
(X) Americans With Disabilities Act, 42 U.S.C. Title I

### THE PARTICULARS OF MY COMPLAINT ARE AS FOLLOWS:

1. I was first employed by Accenture LLP on August 17, 1992, as a staff consultant. I moved up the ranks over the years. The nature of the work involves designing, building and testing business computer systems. We do our work at the clients' places of business. My position requires extensive analytical and mental skills.

2. Accenture LLP, formerly known as Andersen Consulting, is an international corporation which employs more than 70,000 people worldwide in approximately 140 countries. In Connecticut they employ roughly 300 people.

3. In December of 1996, I found myself no longer able to perform everyday personal and professional activities. I suffered from cognitive impairments, to wit: difficulty concentrating, reading, talking and writing. I also experienced weakness, fatigue, parasthesia and muscle fasciculations. Laboratory work by my physician indicated elevated liver enzymes. Further testing revealed severe copper toxicity.

4.  Eventually it was learned that this condition was caused by excess copper in my well water.  I had lived for approximately twenty years in close proximity to the first copper mine in the United States, in East Granby, Connecticut, and to another copper mine which was even closer.

5.  I have been under medical care ever since.  To reduce my copper levels, I was chelated with D-Penecillamine from December of 1997 through February of 1999 and EDTA from July of 1998 through December of 1999.

6.  I continued working full-time in my position, although I was out sick frequently, until April of 1997.  At that time, I went out on total disability compensation.

7.  On January 31, 2001, I became able to resume employment on a part-time basis and so notified Accenture by telephone.  On or about March 5, 2001, Accenture LLP was notified of this fact in writing by my physician and was informed that I could return to work on a three-hour-per-day basis for three days per week (Monday, Wednesday and Friday).  On August 24, 2001, I notified Accenture LLP that my physician had cleared me to work four hours per day, five days per week.

8.  The nature of Accenture's work is such that persons at my level and with my skills can work easily on a part-time basis.  While it might have been somewhat difficult to accommodate me on a part-time basis for out-of-state projects, there are many in-state and in-office projects which, combined with the ability to work via e-mail, easily can accommodate a part-time worker with my skills and experience.

9.  Despite the above, Accenture LLP never has allowed me to return to work in any capacity.  On November 8, 2001, I was told orally by Michele B. Holt, an official of Human Resources for Accenture LLP in Connecticut, that Accenture would not accommodate me and would terminate my employment.

10.  On February 6, 2002, Ms. Holt repeated the above assertion in writing.

11.  I have not yet been terminated, although I am not being paid.

12.  In the manner described above, I believe that Accenture LLP has refused to provide reasonable accommodation of my disability although able to do so.

13.  As a result, I am suffering economic loss and emotional distress.

## N O T A R I Z A T I O N

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Todd A. Bennett, being duly sworn, on oath, states that he is the Complainant herein; that he has read the foregoing complaint and knows the content thereof; that the same is true of his own knowledge, except as to the matter herein stated on information and belief and that as to these matters he believes the same to be true.

Dated at New Haven, Connecticut, this 3rd day of May, 2002.


TODD A. BENNETT


Subscribed and sworn to before me this 3rd day of May, 2002.


Commissioner of the Superior Court


RECEIVED

MAY 0 6 2002

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION