UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 APR -6  A 10: 40

| | |
|---|---|
| TODD BENNETT | CIVIL ACTION NO. |
| Plaintiff, | 3:03CV0080 (AVC) |
| v. | |
| ACCENTURE, LLP | |
| Defendant. | April 5, 2004 |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant, Accenture LLP ("Accenture" or the "Company"), hereby submits this Reply brief in further support of its Motion for Summary Judgment on all of Plaintiff Todd Bennett's ("Plaintiff" or "Mr. Bennett") claims.

Mr. Bennett claims that Accenture violated Section 46a-60(a)(1) of the Connecticut General Statutes because it did not reassign him to a limited part-time position within the Company when he returned after a four year disability leave. Accenture filed its Summary Judgment Brief on November 23, 2004 (Defendant's Brief), arguing, <u>inter alia</u>, that (i) Mr. Bennett's claims are time-barred, (ii) Mr. Bennett was not a qualified individual with a disability, and (iii) Accenture satisfied its duty to try to provide Mr. Bennett with a reasonable accommodation. In his Memorandum in Opposition to Accenture's Motion For Summary Judgment ("Plaintiff's Opposition brief"), Mr. Bennett now argues that when he was ready to return to work part-time, Accenture should have reallocated to him some of the work that other consultants and analysts were completing on their overtime. Despite the foregoing, Plaintiff has completely failed to identify: (i) any specific tasks which were available for Plaintiff to complete, (ii) any consultants or analysts who were working overtime on projects which were

**ORAL ARGUMENT REQUESTED**

BO1 15635767.1

suitable to hand-off, or even (iii) the extent to which any Accenture consultants or analysts were working overtime in the Spring an Summer of 2001. Plaintiff merely speculates, without any evidentiary basis, that opportunities must have existed for Accenture to reallocate work to him from other consultants and analysts who were working on location with clients. It is well-settled, however, that mere assertions of fact are insufficient to refute a properly supported motion for summary judgment and the non moving party must come forward with some sort of extrinsic evidence. *See* Hogan v. State of Conn. Judicial Branch, 1220 F. Supp. 2d 111, 116 (D. Conn. 2002); *Page v. Conn. Dept. of Public Safety,* 185 F. Supp. 2d 149, 153, 156 (D. Conn. 2002). Here, Mr. Bennett "must do more than present evidence that is merely colorable, conclusory, or speculative and must present concrete evidence from which a reasonable juror could return a verdict in [his] favor . . ." (Citations omitted; internal quotation marks omitted.) *Page,* 185 F. Supp. 2d at 153. He has failed to do so and therefore this Court must grant Accenture's dispositive motion.

To complicate matters even further, Plaintiff fails to address in his Opposition brief how his significant medical restrictions would have affected his ability to participate in this contrived job-share program. Plaintiff glosses over the fact that Plaintiff's doctors only approved him to return to work three days a week, four hours a day, in one spot in Connecticut. *See* letter from Dr. Jerrod Kaplan, dated March 5, 2001, attached to the Holt Aff. as Exhibit B. Specifically, Dr. Kaplan outlined Mr. Bennett's restrictions, stating in relevant part:

> [Mr. Bennett] can work three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks. He should continue at that level until he is re-evaluated at Gaylord Hospital. In order to make his transition the most successful, I would suggest that his three hours per day be done for a 9 a.m. to 12 noon shift, Monday, Wednesday, and Friday. When the extra hour is added in two weeks, I would suggest that it be done also on a Monday, Wednesday, Friday schedule. . . . He should be

> assigned just to his home office and not be sent to other locations until he is reassessed at Gaylord Hospital. I would recommend that he be set up in an office that minimizes possible distractions. It would be helpful for Mr. Bennett to have parking available at his office location so that his fatigue can be minimized.

Exhibit B attached to Holt Aff.

Moreover, by the Spring of 2001 Plaintiff had been out of his Accenture job for four years without any training on Accenture's current software and protocols. He even admits in his deposition that Accenture would have had to retrain him before he would be able to perform the essential functions of his analyst position. Bennett Dep. at 104-108. By his own admission, he could not have jumped right into some sort of creative job-share even if one was available.

1. <u>Plaintiff cannot stick his head in the sand in an effort to toll the statute of limitations.</u>

Plaintiff has admitted at his deposition that he knew by November 7, 2001 that Accenture was terminating his employment because it did not have a position available for him. Mr. Bennett testified that he suspected this as early as August 2001. Bennett Dep. at 136-138. Indeed, he has even admitted at his deposition that he began working for his father's Company in October 2001 because he knew he would not be placed in a job at Accenture. Bennett Dep. at 34-36. Thereafter, he filed his charge of discrimination with the CCHRO on May 6, 2002—well more than 180 days after he concluded Accenture could not reinstate him. Plaintiff cannot stick his head in the sand for three to six months, pretending he was not really terminated until Accenture sent out his official termination letter in February 2002, in order to toll his statute of limitations. As a result, his claims are time-barred and the Court should dismiss his Complaint. *Ericson v. City of Meriden*, 113 F. Supp. 2d 276, 286 (D. Conn. 2000); *Williams v. Comm'n on Human Rights and Opportunities*, 257 Conn. 258, 284 (2001).

2. <u>Mr. Bennett has failed to prove that he was "qualified" to perform the essential functions of Accenture's consultant or analyst positions.</u>

Further, in his Opposition brief, Plaintiff did not even try to prove that any accommodation existed which would have allowed him to perform the essential functions of the consultant or analyst job.

Indeed, Mr. Bennett has made no showing that he could perform the essential duties of the analyst or consultant positions with a reasonable accommodation. It is undisputed that in 2001, the essential functions of the positions, included, but were not limited to, ability to lift light materials; proficiency in applicable technologies; understanding in systems integration and interactive design; ability to work overtime, as required; ability to travel to different client locations; ability to work during business hours; proficiency in written and verbal communication skills; ability to work creatively and analytically in a problem-solving environment; ability to work independently in work and/or client settings; and ability to speak and write English proficiently. *See* Holt Aff. at ¶ 6.

There is no question that when Mr. Bennett sought reinstatement after a four-year leave of absence, he had significant job restrictions and his skills were outdated, leaving him unable to perform many of the essential duties of an analyst or a consultant position. Bennett Dep. at. 103-108. During his four year leave of absence, Mr. Bennett did not take any training courses or classes to update his skills. Bennett Dep. at 107. Instead, Mr. Bennett merely surfed the internet for a few hours a week to learn "what was happening in the industry." Bennett Dep. at 107-108.

Assuming, that an analyst or a consultant position was available in Accenture's Hartford office, or even some sort of job-share as Plaintiff suggests, Mr. Bennett's requested accommodations would have prevented him from performing the essential functions of the

positions because he admitted that he had no training or experience on Accenture's current systems and he could not travel to the client locations where the work was being performed. Accordingly, Mr. Bennett was not "qualified" to perform the essential functions of a consultant or an analyst at Accenture.

### 3. Accenture did not refuse to provide Mr. Bennett with the accommodations he requested.

Moreover, despite the fact that Plaintiff has acknowledged at deposition that Accenture conducted an extensive search to find a position for which he was qualified, Plaintiff's brief completely ignores this fact. Accenture has made patently clear that despite its good faith efforts over a nine month period of time, to find a vacant position available for which Mr. Bennett was qualified, it could not do so. See Affidavit of Michele Holt attached to the Defendant's brief. Indeed, Mr. Bennett admits that Michele Holt conducted an extensive search to find a position for Mr. Bennett which met his significant work limitations, but she was not successful. Bennett Dep. at 115-121. Plaintiff's Opposition brief also ignores the Company's depressed economic situation in 2001 when it speculates that Accenture had employees who were working significant overtime, and Mr. Bennett could have done some of that work on his part-time schedule. In his own deposition, Plaintiff admits that Accenture was running "very lean" and the Company was not hiring individuals who were not staffed to a billable project. Bennett Dep. at 130.

Contrary to Mr. Bennett's assertions in his Complaint, Accenture did not refuse to provide Mr. Bennett with his requested accommodations nor did it terminate his employment due to his disability. Rather, Accenture terminated his employment because, although he was available to work on a limited basis, Accenture had no vacant position for him in Connecticut.

Accenture was not required to create a new light duty position for him; see *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035-36 (2d Cir. 1993). Nor was it required to "bump"

BO1 15635767.1

another employee to make a position available for Complainant.[1]  Furthermore, a reasonable accommodation does not mean elimination of any of the job's essential functions." *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 384 (2d Cir. 1996) (internal quotations omitted) (quoting *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir. 1991)).  Mr. Bennett has testified that as both an analyst and a consultant with Accenture, he traveled to client sites for prolonged periods of time and regularly worked in excess of eighty hours a week to complete his tasks during "crunch times."  Again, because Mr. Bennett demanded that he return to work only in Hartford, three days a week from eight to twelve in the morning, it is clear that he could not perform all of the essential functions of a consultant or analyst position.  Accordingly, Mr. Bennett's requests were unreasonable because Accenture had no position available which would satisfy his alleged limitations, and he no longer had the skills to perform the job of an analyst or a consultant at Accenture.

---

[1] *See White v. York Int'l.,* 45 F.3d 357, 362 (10th Cir. 1995).

6

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court enter summary judgment for the Defendant Accenture, LLP on the Plaintiff's Complaint.

Respectfully Submitted,
by Defendant,
ACCENTURE, LLP

_____
Lynn A. Kappelman
Damian W. Wilmot
SEYFARTH SHAW
World Trade Center East
2 Seaport Lane, Suite
Boston, MA 02210
(617) 946-4800
lkappelman@seyfarth.com
dwilmot@seyfarth.com

<u>DEFENDANT'S LOCAL COUNSEL</u>
Douglas Varga, Esq.
**ZELDES, NEEDLE & COOPER**
1000 Lafayette Blvd.
Bridgeport, CT 06604
(203) 333-9441
fax (203) 333-1489

## CERTIFICATE OF SERVICE

I, Lynn A. Kappelman, hereby certify that, I have, on this April 5, 2004, sent a copy of the foregoing Reply brief to the following counsel of record, via first class mail:

John R. Williams, Esq.
Katrena Engstrom, Esq.
Williams & Pattis LLC
51 Elm Street, Suite 409
New Haven, CT 06510

_____
Lynn A. Kappelman

7

BO1 15635767.1