UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TODD BENNETT,                           :
   Plaintiff,                          :
                                        :
v.                                      :    Civil No. 3:03CV0080 (AVC)
                                        :
ACCENTURE, LLP,                         :
   Defendant.                          :

## RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for injunctive relief and damages brought pursuant to the Connecticut Fair Employment Act ("CFEA"), Conn. Gen. Stat. § 46a-60. The plaintiff, Todd A. Bennett, alleges that his former employer, Accenture, LLP ("Accenture") refused to reasonably accommodate his disability.

On February 23, 2004, the defendant, Accenture, filed the within motion for summary judgment (document no. 21) pursuant to Fed.R.Civ.P. 56, arguing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.

The issues presented are: 1) whether the plaintiff's claim has been timely filed within the limitation period set forth in Conn. Gen. Stat. § 46a-82(e); and 2) whether the plaintiff has raised a genuine issue of material fact that the defendant, Accenture, refused to provide reasonable accommodation for his disability. For the reasons

hereinafter set forth, the court concludes that: 1) the plaintiff filed his claim within the applicable limitations period; and 2) the plaintiff has raised a genuine issue of material fact concerning the reasonable accommodation issue. Accordingly, Accenture's motion for summary judgment (document no. 21) is DENIED.

## FACTS

Examination of the complaint, affidavits, pleadings, Local Rule 56(c) statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

The plaintiff, Todd A. Bennett, is a resident of Granby, Connecticut. The defendant, Accenture, LLP ("Accenture"), is a corporation established under the laws of the state of Delaware. Its principal place of business is not set forth in any of the facts.

On August 17, 1992, Bennett commenced employment with Accenture, a global management and consulting firm, as an analyst in Accenture's Hartford, Connecticut office. In 1994, Accenture promoted Bennett to staff consultant. His responsibilities included directing clients to suitable technologies, work at client facilities, and involved work weeks which frequently averaged eighty hours or more. Work

weeks of that duration were common among analysts and consultants during Bennett's employment with Accenture.

In December 1996, Bennett began feeling fatigue and weakness and took an increasing number of hours sick leave in each pay period through April 1997. On April 7, 1997, he began short-term disability leave. On May 23, 1997, Bennett's physician, Robban A. Sica, M.D., informed Accenture that Bennett suffered from hypothyroidism and candida enteritis which caused his fatigue and weakness. On June 4, 1997, Accenture reported to its insurance carrier that Bennett had "consistently been rated an '[o]utstanding' performer since his start with the firm . . . ." On July 7, 1997, Bennett began long-term disability leave. Later in 1997, Bennett's physicians identified this condition as "copper toxicity," allegedly contracted from excess copper in his well water caused by the close proximity of copper mines in East Granby, Connecticut.

On January 31, 2001, Bennett contacted Accenture about returning to work. On March 5, 2001, Bennett's physician, Jerrold L. Kaplan, M.D., in response to Accenture's request, provided Accenture with the relevant documentation regarding Bennett's ability to return to work. Kaplan outlined a temporary, four week plan which restricted Bennett's ability

3

to work to three hours per day, three days per week for the first two weeks and then to four hours per day, three days per week for the next two weeks. Kaplan recommended that Bennett work only in the local Hartford office during this period, and he planned to re-evaluate Bennett after the initial four weeks.

In addition to Bennett's medical limitations, the business landscape at Accenture when Bennett requested to return to work had changed. From 1997 to 2001, during Bennett's medical leave, Accenture made several organizational changes, the largest of which was its deployment of consultants into industry focused market units. During 2001, in response to a downturn in the economy, Accenture implemented several workforce reductions in its consulting and business practices groups. Accenture also implemented a hiring freeze in its business practices group and deferred starting dates for new hires.

The parties stipulate that the essential job functions of analyst or consultant in 2001 included, but were not limited to: proficiency in applicable technologies; understanding in systems integration and interactive design; ability to work overtime, as required; ability to travel to different client locations; ability to work during business

4

hours; ability to work creatively and analytically in a problem-solving environment; and ability to work independently in work and/or client settings.

In March 2001, Accenture's equal employment officer, Michele B. Holt, began investigating opportunities for Bennett which would accommodate his medical restrictions. Holt contacted each of Accenture's five consulting market units in its Hartford office. She contacted representatives in each unit directly. Holt's search yielded a single employment opportunity for which Accenture considered Bennett. On June 1, 2001, Bennett met with Mark Raymond, an associate partner in Accenture's government market unit. Accenture did not select Bennett for this employment opportunity, however, because it asserts he was not conversant in Peoplesoft software, knowledge of which they allege was an essential function of the position. Bennett recalled in his deposition, however, that "Accenture was not willing to make the reasonable accommodation" of training him on Peoplesoft.

On November 7, 2001, Holt telephoned Bennett's home to explain termination procedures, but she did not speak with Bennett. Holt spoke with Bennett's wife but the extent of that conversation is unclear from the record. Holt

5

scheduled another call for the following day. On November 8, 2001, Holt telephonically informed Bennett that Accenture had been unable to locate a position for him and therefore decided to terminate his employment. On February 6, 2002, Holt reduced this notice of termination to writing and mailed it to Bennett. On May 6, 2002, Bennett filed a claim of disability discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") pursuant to Conn. Gen. Stat. § 46a-60 et seq. On December 20, 2002, Bennett brought this action in Hartford Superior Court and Accenture subsequently removed the action to this court on January 10, 2003, pursuant to 28 U.S.C. §§ 1441 and 1446.

## STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the

6

plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, supra, at 247-48 (emphasis original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

## DISCUSSION

### I. Statute of Limitations

Accenture first contends that Bennett filed his complaint after the applicable limitations period set forth in Conn. Gen. Stat. § 46a-82(e). Specifically, Accenture

asserts that Bennett understood that Accenture planned to terminate him "as early as August, 2001," thus his discrimination complaint filed on May 6, 2002 is beyond the one hundred and eighty day statutory period.[1]

In response, Bennett maintains that the alleged act of discrimination occurred at the earliest on November 8, 2001, the day he spoke with Holt and received notice of termination. Therefore, he asserts he timely filed his complaint with the CCHRO on May 6, 2002.

In Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) the Court held that, "[d]etermining the timeliness of [the] complaint . . . requires us to identify precisely the 'unlawful employment practice' of which [the plaintiff] complains."[2] In Ricks, the alleged unlawful employment practice was the college's adverse tenure decision regarding

---

[1] The Connecticut Fair Employment Act states that, "[a]ny complaint filed pursuant to this section must be filed [with the Connecticut Commission on Human Rights and Opportunities] within one hundred and eighty days after the alleged act of discrimination . . . ." Conn. Gen. Stat. § 46a-82(e).

[2] In Ricks, the Court analyzed Title VII statutory language which states that, "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." Delaware State College v. Ricks, 449 U.S. 250, 256 (1980); 42 U.S.C. § 2000e-5(e). The "alleged unlawful employment practice" language is analogous to that of the CFEA which refers to the "alleged act of discrimination." Conn. Gen. Stat. 46a-82(e).

one of its employees. <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 252 (1980). The Court concluded "that the limitations period commenced to run when the tenure decision was made and Ricks was notified." <u>Id.</u> at 259.

In the present case the alleged act of discrimination is Accenture's refusal to accommodate Bennett's disability. In light of <u>Ricks</u>, the limitations period commenced to run when the termination decision was made and Bennett was notified. <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 259 (1980). It is undisputed that this occurred at the latest on November 8, 2001, when Holt explained termination procedures to Bennett over the telephone. This date is one hundred and seventy-nine days prior to Bennett's May 6, 2002 filing with the CCHRO and, therefore, his claim is timely as a matter of law.

## II. Disability Discrimination Claim

Accenture next contends that Bennett has failed to raise an issue of fact with regard to his claim that Accenture failed to accommodate his disability. Specifically, Accenture asserts that, because "[it] did not have a vacant position available for which [Bennett] was qualified," and "he cannot prove that any accommodation existed which would have allowed him to perform the

9

essential functions of the consultant or analyst job," Bennett's disability discrimination claim fails as a matter of law.

In response, Bennett maintains that, to the contrary, he "was qualified to perform the essential functions of the job," and, because Accenture "prides itself on its ability to recommend flexible, creative business solutions . . . ," it should have identified part-time work for him.

The complaint alleges a violation of the Connecticut Fair Employment Act. Conn. Gen. Stat. § 46a-60 et seq. Under the CFEA it is unlawful for an employer "to discharge from employment any individual . . . because of the individual's . . . physical disability . . . ." Conn. Gen. Stat. § 46a-60(a)(1).[3]

---

[3] Connecticut appellate courts have yet to determine whether a cause of action based upon failure to provide reasonable accommodation is actionable under the Connecticut Fair Employment Act. See Adriani v. Commission on Human Rights and Opportunities, 220 Conn. 307, 320 n.12 (1991); see also Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103-104 (1996). Connecticut superior courts, the Connecticut Commission on Human Rights and Opportunities, and legal commentators nevertheless contend that a failure to reasonably accommodate is actionable under the Connecticut Fair Employment Act. See Siegel, O'Connor, Schiff & Zangari, P.C., Connecticut Labor & Employment Law 54-58 (Peter A. Janus ed., The Connecticut Law Tribune 2d ed. 2001); see also Trimachi v. Connecticut Workers Compensation Committee, No. CV 970403037S, 2000 Conn. Super. Lexis 1548, at *13-*24 (Conn. Super. June 14, 2000). It thus appears an open question as to whether a

In <u>Levy v. Commission on Human Rights & Opportunities</u>, 236 Conn. 96, 103 (1996) the Connecticut supreme court noted that, "[a]lthough this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes."  The analogous federal precedent regarding a cause of action based on failure to provide reasonable accommodation concerns the Americans with Disabilities Act ("ADA").  42 U.S.C. §§ 12101 <u>et seq</u>.[4]

Under the ADA, termination is unlawful when a covered entity fails to make "reasonable accommodations to the known physical or mental limitations to an otherwise qualified individual with a disability who is an applicant or

---

reasonable accommodation claim is permissible under the Connecticut Fair Employment Act.  Accenture, however, has not raised this issue and thus apparently concedes, for purposes of this motion only, that a reasonable accommodation cause of action is permissible under the CFEA.  The court therefore assumes, for purposes of this motion only, that a reasonable accommodation cause of action is permissible under the CFEA.

[4] Bennett relies on case law regarding disparate treatment causes of action and violations of Title VII of the Civil Rights Act of 1964.  However, Bennett does not allege disparate treatment and he does not base his claim of discrimination on race, color, religion, sex or national origin.  42 U.S.C. § 2000(e).  Bennett's reliance on case law developed in this area is therefore misplaced.  <u>See</u> <u>Lyons v. Legal Aid Society</u>, 68 F.3d 1512, 1515 (2d Cir. 1995); <u>accord</u> <u>Ezikovich v. Commission on Human Rights and Opportunities</u>, 57 Conn. App. 767, 774 (2000).

11

*employee*, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A)(emphasis added).

"The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds *or desires*." 42 U.S.C. § 12111(8)(emphasis added).[5]

"[T]he term reasonable accommodation may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . appropriate adjustment or modifications of examinations, training materials or policies . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Together, these statutory definitions indicate that an employee seeking reassignment to a vacant position is, therefore, a qualified individual within the meaning of the statute if, with or without reasonable accommodation, he can

---

[5] For purposes of this motion only, Accenture concedes that Bennett is disabled within the meaning of the Connecticut Fair Employment Act.

12

perform the essential functions of the job in question.[6]

The Second Circuit has clarified the burdens of proof regarding a reasonable accommodation cause of action. See Jackan v. New York State Department of Labor, 205 F.3d 562 (2d Cir. 2000); Borkowski v. Valley Central School District, 63 F.3d 131 (2d Cir. 1995). The court in Jackan held that, "in order to recover under the ADA . . . for failure to reasonably accommodate by transfer, a plaintiff bears the burden of proving that a vacancy existed into which he or she might have been transferred." Jackan v. New York State Department of Labor, 205 F.3d 562, 566 (2d Cir. 2000)

The court arrived at its holding in Jackan by applying the following standards articulated in Borkowski:

---

[6] See AKA v. Washington Hospital Center, 156 F.3d 1284, 1301 (D.C. Cir. 1998)("[a]n employee seeking reassignment to a vacant position is thus within the definition if, with or without reasonable accommodation, [he] can perform the essential functions of the employment position to which [he] seeks reassignment."); see also Smith v. Midland Brake, Inc., 180 F.3d 1154, 1162 (10th Cir. 1999)("Our reading of 'qualified individual with a disability' to include individuals who can perform an appropriate reassignment job within the company, with or without reasonable accommodation, even though they cannot perform their existing job no matter how much accommodation is extended, is supported by nearly every circuit that has explicitly or implicitly considered the issue.")

>First, the plaintiff bears the burden of proving that [he] is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of [his] burden of persuasion, that an effective accommodation exists that would render [him] otherwise qualified.  On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits.  These two requirements placed on the plaintiff will permit district courts to grant summary judgment for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.

Borkowski v. Valley Central School District, 63 F.3d 131, 139 (2d Cir. 1995).

In the present case Bennett sought reassignment as an accommodation of his disability.  It is undisputed that Accenture considered reassigning Bennett to an employment opportunity in its government market unit.  Bennett has, therefore, satisfied his initial burden of proving that "a vacancy existed into which he might have been transferred." Jackan v. New York State Department of Labor, 205 F.3d 562, 566 (2d Cir. 2000).

The next question is whether, with or without reasonable accommodation, Bennett could have performed the essential functions of the government market unit employment opportunity.  42 U.S.C. § 12111(8).  Accenture maintains that it could not assign Bennett to this position because he was not

conversant in Peoplesoft, a technology it alleges was an essential function of the job. Accenture's reason for not assigning Bennett to the position in question, therefore, suggests that had Bennett been conversant in Peoplesoft he would have been otherwise qualified to perform the essential functions of the position. Bennett does not dispute his lack of experience with Peoplesoft; however, he asserts that Accenture could have trained him in the Peoplesoft technology as a reasonable accommodation of his disability.

The issue, then, is whether training Bennett in Peoplesoft is a reasonable accommodation. Accenture's 1996 annual review of Bennett's job performance indicates that Accenture included training in new technologies as part of its employment policies. It bears reiteration that under the ADA, "the term reasonable accommodation may include . . . appropriate adjustment or modifications of . . . training materials or policies . . . ." 42 U.S.C. § 12111(9)(B); accord Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 832 (8th Cir. 2000)("[r]easonable accommodations might include special training . . . ."). It does not appear, therefore, that Bennett's proposal is facially unreasonable. The court thus concludes that Bennett's suggestion meets the requirement of "identifying an accommodation, the costs of

15

which, facially, do not clearly exceed its benefits." Borkowski v. Valley Central School District, 63 F.3d 131, 139 (2d Cir. 1995).

It is then Accenture's burden to "demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . ," or that it was unreasonable. 42 U.S.C. § 12112(b)(5)(A); Borkowski v. Valley Central School District, 63 F.3d 131, 142 (2d Cir. 1995). The record, however, is void of any evidence regarding the costs and benefits of training Bennett in Peoplesoft. Taking all inferences in favor of the non-moving party, as the court must in a motion for summary judgment, the court cannot say that Bennett's "proposal is either clearly ineffective or outlandishly costly." Borkowski, 63 F.3d 131, 139 (2d Cir. 1995); see Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). The court concludes, therefore, that there remains a genuine issue of material fact as to whether Accenture failed to provide reasonable accommodation of Bennett's disability.

## CONCLUSION

For the foregoing reasons, Accenture's motion for summary judgment (document no. 21) is DENIED.

It is so ordered, this 2nd day of August, 2004, at Hartford, Connecticut.

                                        Alfred V. Covello
                             United States District Judge