B

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT,<br><br>       Plaintiff,<br><br>v.<br><br>ACCENTURE LLP,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 3:03CV0080 AVC<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS

The Defendant, Accenture LLP ("Accenture" or "Defendant"), respectfully submits its proposed voir dire questions.

Personal History
- Please state your name and the city or town in which you live.
- What is your marital status?  Please state the names of your spouse, your children, and the names of any other persons with whom you reside.
- Please state the ages of your spouse and children, their level of education and their jobs.
- Do you live in a house or apartment?
- Do you own or rent your place of residence?
- How long have you lived at your current address?
- Where were you born?
- How old are you?
- Have you or any member of your family ever been in the military?  If so, when and for how long?
- Please describe your educational background.
- Please describe your work history.

Knowledge Of Parties, Counsel And Potential Witnesses
- Are you acquainted in any way with the plaintiff in this case, Todd Bennett, or his family or friends?  If so, please describe the nature and extent of your relationship with the plaintiff.
- Are you acquainted in any way with the defendant in this case, Accenture, or its employees?  If so, please describe the nature and extent of your relationship with the defendant.

- Do you know or have you ever had any dealings with plaintiff's attorneys or their law firm of Williams and Pattis LLC? If so, please describe the nature and extent of those contacts.
- Do you know or have you ever had any dealings with defendant's attorneys or their law firm, Seyfarth Shaw? If so, please describe the nature and extent of those contacts.
- Does anyone know any of the following individuals who may be witnesses: Michele Holt, Toni Corban, Paula Miller, Tara Parisi, Mark Raymond, Andrew Burns, Amy Salvatore, Olga Conway, Hilary McCracken, Martha Strong, or Marty Cole?
- Have you ever been a member of a union? Is so, which one?
- Have you ever had any dealings with Accenture, formerly known as Andersen Consulting? If so, please explain.
- Do you know anyone who is now or has been employed at Accenture? If so, please state the name of any person, your relationship with the person, when and where they were employed, and what their job is or was.
- Have you or any member of your family ever applied for any job with Accenture? Did you get the job?
- Are you familiar with, or have you read anything about Accenture? If so, do you hold any favorable or unfavorable view of Accenture?

## Litigation History

- Have you, your family, or any friends ever been personally involved in a lawsuit, either as a party, witness or otherwise? If so, please describe the nature of the litigation and your association with it, including the type of case, whether you or the other persons identified were a plaintiff or defendant, and the outcome of the case. In general, what were your feelings about the experience? Did you believe the result was fair or unfair and why?
- Have you, your family, or any close friend ever filed suit or a claim of discrimination, or any other type of charge? If so, please describe the nature of the charge or claim.
- Have you, your family, or any close friend ever filed a grievance, charge, complaint, arbitration lawsuit or other type of protest against an employer? If so, please state the circumstances surrounding the action, including the name of the employer, the nature of the protest, when this occurred, the outcome and the other facts and circumstances surrounding the action.

## Prior Jury Service

- Have you ever served on a jury before? If so, please state when, the length of your jury service and the nature of the case or cases in which you were involved.
- Did the jury reach a verdict? If not, why not?
- Do you hold any favorable or unfavorable view of your past jury service?

## Employment History

- Are you currently employed? If so, please state by whom and in what position. How long have you held that position? If you have been in your present position for less than five years, please give your previous three jobs.

BO1 15666449.1

- Are you, or have you ever been, a member of a union at work? If so, please state the name of the union. If you are or have been a member of a union, were you ever involved in a grievance or arbitration procedure against your employer? If so, please describe the nature and extent of your involvement, and your thoughts on the fairness of the grievance and arbitration process.
- By whom is your spouse employed, your children and other members of your immediate family, and any other persons with whom you reside? What jobs or positions do they hold?
- Have you, your spouse, any member of your immediate family, or any persons with whom you reside ever been discharged, demoted, had a job eliminated or not hired for a job you believed you were entitled to? If so, please state when this occurred, the job involved, the employer involved, the reason or reasons given and any other details regarding the situation. Please describe your feelings regarding the manner in which your employer handled the situation.
- Do you believe you, your spouse, any member of your immediate family or any close friend were ever treated or disciplined unfairly by an employer? If so, please describe.
- Have you, your spouse, or any member of your immediate family or close friend ever held any personnel or human resources job? If so, please state the position or positions held and describe your duties performed.
- Have you ever been responsible for or participated in making a decision to discipline, discharge, hire, promote or demote any person? How did you feel about the experience? Did you think the person was treated properly? Did you feel the action was unfair in any way? Please explain.
- Have you ever been a supervisor or a member of management at any place of employment? If so, please state when, for what employer, for how long and in what position.
- Does the fact that this case involves claims of disability discrimination cause you to feel one way or another about the plaintiff or defendant?
- Have you, or any member of your immediate family or any close friend ever been harassed at work?
- Have you, or any member of your immediate family or any close friend ever felt that they have been discriminated against on the job? If so, please describe the circumstances.
- Have you, any member of your immediate family or any close friend ever been accused of discriminating against another individual on the job? If so, please describe the circumstances.
- Have you, any member of your immediate family or any close friend ever been named as an individual defendant in a lawsuit? If so, please explain the nature of that lawsuit?

Personal Habits
- What do you do in your spare time?
- Do you read newspapers? Which ones?
- Do you read magazines or books? Which magazines or books have you read recently? Do you read any online publications or websites regularly? Which ones?
- What TV shows do you watch?
- What clubs, organizations, or groups do you belong to?

3

- Do you hold any religious or other beliefs which would preclude you from being fair or impartial?

## Medical History

- Do you have any medical problems which might affect your ability to hear or see or otherwise consider evidence presented in the case and deliberate to reach a verdict?
- Do you believe that it is always wrong for a supervisor to become angry with an employee?
- Are you, or any member of your immediate family disabled?  Explain.  Does that individual work?
- Have you or any member of your immediate family ever requested an accommodation from an employer for a disability?  Explain.  What was the outcome?

## Corporations

- Do you feel that just because an individual has sued a company that she is entitled to recover?
- Do you feel any bias or prejudice against Accenture because it is a corporation or because it is a defendant?
- If the evidence justified it, could you find in favor of the defendant, just as easily as for the plaintiff?

## General

- If you were a party to this case expecting a fair trial, would you be willing to have a juror with your frame of mind?
- Is there anything in your background about which you think we should know but have not asked that could affect your ability to be a fair and impartial juror in this case?

Dated: September 15, 2004

Respectfully submitted,

DEFENDANT
ACCENTURE LLP

By _____

Lynn A. Kappelman, Esq. (ct 03480)
  lkappelman@seyfarth.com
Daniel B. Klein, Esq. (ct 18934)
  dklein@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
(617) 946-4801 (fax)

<u>Local Counsel:</u>
Douglas Varga, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
Bridgeport, CT 06604

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2004 a copy of the foregoing document was sent by
overnight delivery to Katrena Engstrom, Esq., Williams & Pattis LLC, 51 Elm Street, Suite 409,
New Haven, CT 06510.

Daniel B. Klein

BO1 15666449.1

C

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| TODD BENNETT, | ) | |
| Mr. Bennett, | ) | |
| v. | ) | Civil Action No. 3:03CV0080 AVC |
| ACCENTURE LLP, | ) | September 15, 2004 |
| Accenture. | ) | |

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS

The Defendant, Accenture LLP ("Accenture" or "Defendant"), respectfully requests pursuant to Fed. R. Civ. P. 51(a) that the Court instruct the jury as set forth below.

Citations are provided for the convenience of the Court, and are not part of the requested instructions. Defendant reserves the right to amend and/or supplement these requests during or at the conclusion of the trial.

Respectfully submitted,

DEFENDANT
ACCENTURE LLP

By _____
Lynn A. Kappelman, Esq. (ct 03480)
lkappelman@seyfarth.com
Daniel B. Klein, Esq. (ct 18934)
dklein@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
(617) 946-4801 (fax)

Local Counsel:
Douglas Varga, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
Bridgeport, CT 06604

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 15, 2004 a copy of the foregoing document was sent by overnight delivery to Katrena Engstrom, Esq., Williams & Pattis LLC, 51 Elm Street, Suite 409, New Haven, CT 06510.

Daniel B. Klein

1.    **Mr. Bennett's Claim Under the Connecticut Fair Employment Practices Act**

Mr. Bennett has sued Accenture claiming that Accenture violated the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. Section 46a-60(a)(1). Mr. Bennett claims that Accenture failed to accommodate his alleged disability (copper toxicity poisoning) because it did not create a limited part-time position for him within the Company when he returned after a four-year disability leave.

CFEPA is a Connecticut statute that makes it unlawful for an employer to discriminate against an employee because he has a disability. In addition, the Americans with Disabilities Act ("ADA"), CFEPA's federal disability law counterpart, requires that employers reasonably accommodate an otherwise qualified employee with a disability if that accommodation would allow him to perform the essential functions of his job. Plaintiff claims that CFEPA has the same requirement that an employer must reasonably accommodate an employee's disability.[1]

2.    **Elements of Mr. Bennett's Claim**

To establish his claim for failure to accommodate a disability, Mr. Bennett has the burden of proving, by a preponderance of the evidence, each of the following elements:

(1)    That at the time Mr. Bennett requested reinstatement in 2001, he had a "disability," as I will define that term for you;

(2)    That at that time, he was otherwise qualified for the position in question;

(3)    That Mr. Bennett requested reasonable accommodation for his alleged disability, and that Accenture did not make a good faith effort to accommodate his purported disability.

---

[1] Although Accenture anticipates submitting a Motion for Directed Verdict on the basis that a cause of action based upon a failure to provide reasonable accommodation does not exist under CFEPA, Accenture submits these Proposed Jury Instructions in the event that the Court denies Accenture's Motion for Directed Verdict. *See Adriani v. Comm'n on Human Rights and Opportunities*, 220 Conn. 307, 320 n.12 (1991).

3.    **Element One – "Disability" Defined**

You must first decide whether Mr. Bennett has proven by a preponderance of the evidence that he was a person with a disability at the time of his requested reinstatement. To prove that he had a "disability" under CFEPA, Mr. Bennett must prove that he had a physical impairment that substantially limited one or more major life activities.

A physical impairment is defined as any physiological disorder or condition affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

A physical impairment rises to the level of a disability only if it substantially limits one or more of an individual's major life activities. Major life activities are those activities central to daily life. Examples include walking, speaking, seeing, hearing, breathing and learning.

An impairment "substantially limits" one or more major life activities if an individual is unable to perform the activity, or is significantly restricted in the ability to perform the activity, as compared to an average person's ability to perform the same activity. Factors you may consider in determining whether the impairment substantially limits a major life activity include: (1) nature and severity of the impairment; (2) its duration or expected duration; and (3) its expected or actual permanent or long-term impact.

With respect to the activity of working, "substantially limited" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs. The inability to perform a single, particular job, or Mr. Bennett's own job, does not constitute a substantial limitation on the major life activity of working.

4

Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. Additionally, some impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling, or any number of other factors. Your decision as to whether Mr. Bennett's impairment was disabling must therefore be particularized as to Mr. Bennett and based on the evidence that has been presented to you during the trial.

You must decide whether Mr. Bennett's purported condition (*i.e.*, "copper toxicity") at the time of his requested reinstatement in 2001 was a disability as that term is defined under Conn. Gen. Stat. § 46a-51(15). Mr. Bennett has testified that he lacked "extra energy" to visit family and friends and was unable to read his mail or concentrate for long periods of time during his four year disability leave. He also testified that his treatments included going to the gym every day and sitting in the sauna. Your focus must be on whether the impairment substantially affected a <u>major life activity</u>, and not merely an activity that is important to Mr. Bennett.

*Authority*: *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 691 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *Munck v. New Haven Sav. Bank*, 251 F. Supp. 2d 1078, 1082-1085 (D. Conn. 2003); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 642 (2d Cir. 1998); *Kocher v. Loyola Univ.*, 6 A.D. Cas. (BNA) 1182 (E.D. La. 1997); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994), *cert. denied*, 115 S.Ct. 1095 (1995); *Dailey v. Koch*, 892 F.2d 212, 215 (2d Cir. 1989); 3 Devitt, Blackmar and Wolff, *Fed. Jury Prac. & Instruc.*, § 104A.04 (West 1998); 29 C.F.R. § 1630.2(j)(1), (3); *Homeyer v. Stanley Tulchin Assoc., Inc.*, 91 F.3d 959, 961 (7th Cir. 1996).

5

4.      **Element Two – "Otherwise Qualified" Defined**

If you, the jury, find that Mr. Bennett failed to prove to you, by a preponderance of the evidence, that he was disabled, as I have defined that term for you, at the time in question, then you must find for the defendant, Accenture.

If, on the other hand, you find that Mr. Bennett has proven to you that he was disabled, you must next consider whether he has proven, by a preponderance of the evidence, that despite his disability he was "otherwise qualified" for the analyst or consultant positions. An employee is not entitled to a reasonable accommodation unless he can prove he is "otherwise qualified." The employee must be "qualified" as measured by his then current job duties — the essential functions in the position that he held.

To satisfy this element, he must prove to you, by a preponderance of the evidence, that he was capable of performing the essential functions of the analyst or consultant position, including having the requisite skills, education, temperament, and abilities to perform the position, or that an effective accommodation existed that would have permitted him to perform the job's essential functions.

**"Essential Functions" Defined**

The term "essential functions" of a job means the fundamental duties of the job. The term "essential functions" does not include the marginal functions of the position. In determining the essential job functions, the law requires that you consider Accenture's judgment as to which functions are essential to the position.

If you find that Mr. Bennett has not proven that he could have performed the essential functions of the analyst or consultant position, either with or without a reasonable accommodation, then you must find in favor of Accenture.

*Authority: Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2nd Cir. 1995); 3 Devitt, Blackmar and Wolff, *Fed. Jury Prac. & Instruc.*, §§ 104A.04, 104A.06 (West 1998); 42 U.S.C. §12111(8) §12112(a),(b); *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159 (7th Cir. 1998); *Waggoner v. Olin Corp.*, 169 F.3d 481 (7th Cir. 1999); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996); *Nowak v. St. Rita High School*, 142 F.3d 999, 1003-1004 (7th Cir. 1998); *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994); *Gantt v. Wilson Sporting Goods*, 143 F.3d 1042, 1047 (6th Cir. 1998).

You have heard testimony at trial that, in 2001, the essential functions of the positions Mr. Bennett sought, included, but were not limited to, ability to lift light materials; proficiency in applicable technologies; understanding in systems integration and interactive design; ability to work overtime, as required; ability to travel to different client locations; ability to work during business hours; proficiency in written and verbal communication skills; ability to work creatively and analytically in a problem-solving environment; ability to work independently in work and/or client settings; and ability to speak and write English proficiently.

If you find that when Mr. Bennett sought reinstatement after a four-year leave of absence, his skills were outdated, and/or he was unable to perform any of the essential functions of an analyst or a consultant position with his significant limitations with or without reasonable accommodation, than you must find for Accenture because he could not perform the essential functions of the job.

You also heard substantial testimony at trial that Mr. Bennett's requested accommodations would have prevented him from performing many of the essential functions of an analyst or a consultant position. Mr. Bennett explained that he when he returned to work, he requested that Accenture accommodate him by significantly reducing the work schedule for an analyst (i.e., "three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks"). Among other things, he specifically requested that Accenture assign him to a position in the Hartford office, and required

7

that he "not be sent to other locations." Mr. Bennett himself testified that before he took his

leave of absence, he regularly worked well in excess of forty hours per week to complete his

tasks as a consultant and analyst and traveled to customer sites for weeks at a time.

You heard testimony that, in 2001, Mr. Bennett had no training or experience on

Accenture's then current systems and he had no knowledge of the Peoplesoft program.  Even if

you find that Accenture had an analyst or a consultant position available in its Hartford office,

Mr. Bennett must prove that his requested accommodations and outdated skill set would not have

prevented him from performing the essential functions of the position.


AUTHORITY:  42 U.S.C. § 12102(2)(C); Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000); Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2151 (1999); Murphy v. United Parcel Serv., Inc., 119 S. Ct. 2133, 2138 (1999); Ryan v. Grae & Rybicki, 135 F.3d 867, 872 (2d Cir. 1998); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 647 (2d Cir. 1998); Cabera v. Jakabovitz, 24 F.3d. 372, 381-82 (2d Cir.), cert. denied, 115 S. Ct. 205 (1994); Norton v. Sam's Club, 145 F.3d 114, 118-20 (2d Cir. 1998); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988); Piascyk v. City of New Haven, 64 F. Supp.2d 19, 32 (D. Conn. 1999), aff'd 216 F.3d 1072 (2d Cir. 2000) (table); Alexandru v. Northeast Utils. Serv. Co., 1996 WL 684421, at *5 (D. Conn. Oct. 10, 1996); 29 C.F.R. §§ 1630.2(j)(1)(i)-(ii) & 1630.2(j)(3)(i).


**5.    "Reasonable Accommodation" - Defined**

The law requires employers to provide reasonable accommodation to otherwise qualified

employees who are disabled to enable them to perform the essential functions of their jobs unless

the accommodation would impose an undue hardship on the employer or pose a direct threat to

the employee or others.

The term "reasonable accommodation" means modifying a job so that a person with a

disability can perform the essential functions of the job.  For the accommodation to be

8

reasonable, Plaintiff must prove that the accommodation would have been effective in allowing him to perform the essential functions of the job.

The question for you to decide in this case is whether Mr. Bennett requested a reasonable accommodation, and did Accenture fail to make a good faith effort to accommodate his purported disability during the period before Mr. Bennett's employment terminated.

An employee is not entitled to the best accommodation or his preferred accommodation, only a reasonable accommodation which allows the employee to perform the essential functions of the job. Nor does reasonable accommodation mean a reassignment of duties which would burden Plaintiff's co-workers or impose undue hardship on the operation of the business.

A reasonable accommodation does <u>not</u> include changing or eliminating any essential function of a job, shifting any of the essential functions of the job to others, <u>or creating a new position for the disabled employee</u>.

In this case, Mr. Bennett contends that Accenture was required to reinstate him to a part-time position with significant limitations after he returned from a four year leave of absence. Mr. Bennett has testified that as both an analyst and a consultant with Accenture, he traveled to client sites for prolonged periods of time and regularly worked in excess of eighty hours a week to complete his tasks during "crunch times." Again, Mr. Bennett testified that upon his return, he demanded that he return to work only in Hartford, four hours a day, three days a week.

If you find that Mr. Bennett's proposed accommodation – that Accenture reinstate him with his doctor's significant limitations that would eliminate the essential job functions of an analyst or consultant position – was unreasonable, then you must find for Accenture.

*Authority: Wernick v. Fed. Reserve Bank of N.Y.,* 91 F.3d 379, 384 (2d Cir. 1996) (internal quotations omitted) (quoting *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir. 1991)).

9

Further, an employer is not necessarily required to accommodate erratic and unreliable attendance at work by a disabled employee. Reliable and regular attendance is an essential function of most management level jobs. If you find that Mr. Bennett's proposed schedule was too erratic and unreliable for an analyst or consultant at Accenture, you must find for Accenture.

*Authority: Haschmann v. Time Warner Entertainment Co.*, 8 A.D. Cas. (B.N.A.) 692 (7th Cir. 1998).


6.    **Reassignment As A Reasonable Accommodation**

In this case, the parties agree that Mr. Bennett could not perform the essential functions of his prior position without an accommodation after he returned from his medical leave. Instead, Mr. Bennett claims that Accenture should have reassigned him to a different, vacant part-time position as a reasonable accommodation.

To prevail on a claim for reassignment to a vacant position as a reasonable accommodation, Mr. Bennett must prove all of the following by a preponderance of the evidence:

(1)    He requested reassignment to a vacant position;

(2)    He followed Accenture's procedures for requesting a reassignment;

(3)    The requested position existed and there was a vacancy in the desired position at the time he sought it;

(4)    He was qualified for the vacant position based on Accenture's legitimate job qualifications for the position;

(5)    No other candidates for the position were better qualified for the position; and

(6)    Accenture unreasonably rejected his request for the reassignment.

An employer is not required to create a vacant position as a reasonable accommodation. Additionally, the employer does not have to "bump" a non-disabled employee from a position in order to create a vacancy.

When an employee requests reassignment to a vacant position as a reasonable accommodation, the employer does not have to give the position to the disabled employee. An employer need only consider the disabled employee for the position, along with consideration of the other non-disabled candidates. A reasonable accommodation is meant to provide a disabled employee with an equal opportunity to compete for a vacant position, not to provide an advantage over non-disabled employees.

If you find that Plaintiff Bennett has not proved any one of these elements by a preponderance of the evidence, your verdict must be in favor of Accenture. In particular, <u>if you find that no vacant position existed into which Mr. Bennett might have been transferred, then you must find for Accenture.</u>

Authority: 42 U.S.C. § 12111(9); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir. 1996); *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159 (7th Cir. 1998); *Pond v. Michelin North America, Inc.*, ___ F.3d ___ 1999 WL 444633 (7th Cir. 1998); *Miller v. Ill. Dept. of Corrections*, 107 F.3d 483, 486 (7th Cir. 1997); *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997); 29 C.F.R. § 1630.5(a); *Hazen Paper Co. v. Biggins*, 113 S. Ct. 1701, 1709-10 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Holmberg v. Baxter Healthcare*, 901 F.2d 1387 (7th Cir. 1990); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912-13 (7th Cir. 1996).

### **"Undue Hardship" Defense**

Even if Plaintiff proves that he requested an accommodation that was reasonable, Accenture would not have to provide that accommodation if it would impose an undue hardship on the operation of its business. Thus, if Mr. Bennett meets his burden, then Accenture bears the burden of proving that the accommodation Mr. Bennett proposed would have imposed an undue hardship on Accenture's business.

11

An "undue hardship" is an action that would create significant difficulty or expense for the employer, considering the nature and cost of the accommodation, the overall financial resources of the employer, the effect of the accommodation on expenses and resources, and the impact of the accommodation on the operations of the employer, including the impact on the ability of other employees to perform their duties and the impact on the employer's ability to conduct business.

*Authority: White v. York Int'l.,* 45 F.3d 357, 362 (10th Cir. 1995).


If you find that Mr. Bennett's proposed accommodation – that Accenture reinstate him with his doctor's significant limitations – posed an undue hardship on Accenture's business, then you must find for Accenture.

If, on the other hand, Mr. Bennett proves that a reasonable accommodation existed and Accenture cannot prove undue hardship, then Mr. Bennett must prove that Accenture did not engage in good faith in the interactive process (*i.e.*, make a good faith effort to accommodate his purported disability).

*Authority: Jackan v. New York State DOL,* 205 F.3d 562, 566 (2d Cir. 2000); *Borkowski v. Valley Central School District,* 63 F.3d 131, 137-38 (2d Cir. 1995); *Rochford v. Town of Cheshire,* 979 F. Supp. 116, 119 (D. Conn. 1997); *Geuss v. Pfizer, Inc.,* 971 F. Supp. 164, 174 (E.D. Pa. 1996); 3 Devitt, Blackmar and Wolff, *Fed. Jury Prac. & Instruc.,* § 104A.09 (West 1998); 29 C.F.R. § 1630.9 App.; *Sieberns v. Wal-Mart Stores, Inc.,* 125 F.3d 1019, 1022 (7th Cir. 1997);*Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563 (7th Cir. 1996); *Hedberg v. Indiana Bell Telephone Co.,* 47 F.3d 928, 934 (7th Cir. 1995); *Dalton v. Subaru-Isuzu Automotive, Inc.,* 141 F.3d 667, 678 (7th Cir. 1998); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 912-13 (7th Cir. 1996); *Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041, 1047-48 (7th Cir. 1996); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996); 29 C.F.R. §1630.5, App. (1999); *Gantt v. Wilson Sporting Goods, Co.,* 143 F.3d 1042 (6th Cir. 1998); *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.), *cert. denied,* 513 U.S. 1001 (1994); 42 U.S.C. 12117(a); *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 139 (7th Cir. 1994); *Schmidt v. Methodist Hospital of Indiana, Inc.,* 89 F.3d 342, 344-45 (7th Cir. 1996).

12

### "Interactive Process" Defined

Once an employee has made known his disability and has requested an accommodation, the potential development of an appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the employee. What this means is that the employer and the employee both bear responsibility for furthering the process and helping one another to determine the employee's precise limitations and exploring whether a reasonable accommodation exists that would allow the employee to perform the essential functions of his position.

The employer and the employee are required to participate in the interactive process of determining a reasonable accommodation honestly or in "good faith." You are entitled to find that a party that obstructs or delays the interactive process is not acting in good faith. Likewise, a party that fails to communicate, by way of initiation or response, may also be acting in bad faith.

An employer is entitled to ask the employee for medical certification regarding the disability and how it affects the employee's ability to perform the job. The employer can also seek medical documentation regarding what type of reasonable accommodation might be effective for the employee's disability. If an employee fails to provide the medical information, he has not cooperated in the interactive process in good faith and the employer need not provide any accommodation.

*Authority*:      29 C.F.R. pt. 1630, App.; *Beck v University of Wisconsin Bd. Of Regents*, 75 F.3D 1130, 1135 (7th Cir. 1997); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3D 1281 (7th Cir. 1997); *Zamudio vs. Patla*, 956 F. Supp. 803 (N.D. Ill. 1997); *Hunt-Golliday v. Metropolitan Water Reclamation Dist. Of Greater Chicago*, 104 F.3d 1004, 1012 (7th Cir. 1997); *McCreaery v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1998); *VanZande v. Wis. Dept. Of Admin.*, 44 F.3d 538 (7th Cir. 1995).

7.    **Good Faith Efforts To Make Reasonable Accommodation - Defense**

Accenture asserts that it has made a good faith effort to reasonably accommodate Bennett's alleged disability.  Accenture need only provide a reasonable accommodation, not necessarily the accommodation the Plaintiff requests.

Your verdict should be for Accenture if the evidence demonstrates to you, by a preponderance of the evidence, that:

(1) Mr. Bennett did not inform Accenture that an accommodation was needed; or

(2) If he did, Accenture made a good faith effort to identify and make a reasonable accommodation that would provide Mr. Bennett with an equally effective opportunity at the work place.

*Authority: Haschmann v. Time Warner Entertainment Co.*, 8 A.D. Cas. (B.N.A.) 692, 700 n.12 (7th Cir. 1998); *See* 42 U.S.C. §1981a(a)(3); 3 Devitt, Blackmar and Wolff, *Fed. Jury Prac. & Instruc.*, § 104A.08 (West 1998); *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *Van Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995).


You heard testimony from Mr. Bennett that Accenture did not have any vacant positions in Connecticut for him when he returned from leave.  The law does not require Accenture to create a new light duty position for him.  If you find that Accenture made good faith efforts to find an existing vacant position and make a reasonable accommodation for Mr. Bennett, even if unsuccessful, then you must find for Accenture.


*Authority:*   *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035-36 (2d Cir. 1993)


8.    **Accenture's Business Judgment**

Just as your verdict must not be premised on sympathy, you also must not substitute you judgment for Accenture's judgment.  You are not required to, and must not, decide whether you

14

agree with Accenture's decisions. Under the law, an employer is entitled to exercise its management discretion and make decisions regarding its work force. The wisdom, correctness and justification for such decisions are not subject to your review and may not be second-guessed by you. Simply put, it is not your role to decide whether Accenture treated Mr. Bennett fairly or unfairly; your sole responsibility is to decide whether Mr. Bennett has satisfied his burden of proof on his claim.

CFEPA does not protect Mr. Bennett from a business decision by Accenture which is unreasonable or unfair, only from one which is discriminatory. An employer is entitled to make its own policy and business judgments, as long as this reason is not a pretext for discrimination. You are not to judge whether Accenture's policies are fair or reasonable, or whether Accenture made the correct management decision or whether it made a mistake. You are only to decide if Mr. Bennett was denied a reasonable accommodation in violation of CFEPA.

*AUTHORITIES*: *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116-117 (2d Cir . 1988); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985); *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir. 1987).

9.    **At-Will Employment**

In the absence of a specific contract, every employment relationship is "at will." Mr. Bennett did not have a contract promising employment with Accenture for any particular length of time; accordingly, he was employed "at-will." This means that Mr. Bennett was free to terminate his employment relationship with Accenture at any time. Similarly, Accenture also was entitled to terminate Mr. Bennett for any reason or for no reason, provided only that the reason was not otherwise prohibited by law.

15

10.    **Damages Under CFEPA**

I will next instruct you as to possible damages. You should not interpret the fact that I am giving you instructions on Plaintiff's possible damages as any indication that I feel he should, or should not, prevail in this case. I am instructing you on damages only so you will have guidance in the event that you decide that the defendant is liable and the Plaintiff is entitled to recover money from the Defendant. If you find for Accenture, you will not consider damages.

**Compensatory Damages**

If you find a violation of CFEPA, Mr. Bennett is entitled to damages called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole – that is, to compensate the Plaintiff for the injuries he suffered on account of the Defendant's unlawful employment action.

If the Plaintiff prevails, he is entitled to any damages which he has proven by a preponderance of the evidence as directly flowing from Accenture's purported failure to reasonably accommodate his disability. These include lost wages and emotional distress as caused by his termination.

The compensatory damages that you may award must be fair compensation for all of Plaintiff's damages, no more, no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant. Likewise, you may not award damages based simply on speculation or guesswork. Any award must compensate Mr. Bennett fairly for any injuries he may have sustained, but must have a basis in the evidence and be reasonable in the light of that evidence.

*Authority: Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 231-32 (1982).

**Back Pay**

Should Mr. Bennett prevail, his compensatory damages may include back pay, which represents the monies he would have earned at Accenture from the date of his discharge up until the date of the commencement of this trial. This is because an employee is generally entitled to such back pay from the date of his termination to the date that the alleged discrimination is rectified.

**Mitigation of Damages**

Now I must add that a victim of employment discrimination has a duty to mitigate his damages after his termination. By this duty I mean that Mr. Bennett was required to use reasonable diligence in finding other suitable employment following his termination from Accenture. If he accepted less prestigious work, his earnings from that job are simply subtracted from his back pay award. In order for the Defendant to prevail on this defense, Accenture must prove by a preponderance of the evidence that suitable work existed, for which Mr. Bennett was qualified, and that he did not make reasonable efforts to obtain it.

If you find that Mr. Bennett did properly mitigate his damages and is entitled to some amount of back pay plus benefits, you must make certain deductions from this award. You must deduct any sums actually earned by him since he left Defendant's employment. That is, you must deduct any disability benefits he received, any severance and vacation pay he received from the company, any unemployment compensation he received, and any earnings from any jobs held since his discharge.

**Punitive Damages**

Independent from compensatory damages, CFEPA allows the Plaintiff to recover punitive damages against a Defendant that has engaged in intentional discrimination.

Punitive damages may be awarded only if you find that the Plaintiff has proven that the Defendant has engaged in intentional discrimination and has done so with malice or reckless indifference to Plaintiff's rights under CFEPA. The terms "malice" and "reckless indifference" refer, not to the Defendant's awareness that it is engaging in discrimination, but to its knowledge of the law and that it may be acting in violation of that law.

*AUTHORITY:* 3 Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, § 104.07 (4th ed. 1987 & Supp. 1995); *Kolstad v. American Dental Ass'n*, 119 S. Ct. 2118, 2128-29 (1999); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235-36 (2d Cir. 2000); *E.E.O.C. v. Wal-Mart Stores*, 187 F.3d 1241, 1248 (10th Cir. 1999); *Kerr-Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1214-15 (1st Cir. 1995); *Hull v. APCOA/Standard Parking Corp.*, 2000 WL 198881, at *14 (N.D. Ill. Feb. 14, 2000); 42 U.S.C. § 1981a(b)(1).