UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT | : |
| VS. | :   NO.  3:03CV80(AVC) |
| ACCENTURE, LLP | :   SEPTEMBER 16, 2004 |

## JOINT TRIAL MEMO

1. **Trial Counsel**

   John R. Williams
   Norman A. Pattis
   Katrena Engstrom
   Timothy Mahoney
   Kim Coleman-Waisonovitz
   Joseph M. Merly
   Williams and Pattis, LLC
   51 Elm Street
   New Haven, CT 06510
   (203)562-9931
   Fax: (203) 776-9494

2) **Jurisdiction**

   The Court has original jurisdiction over this action under 28 U.S.C. § 1332.  This action was removed to this Court on the basis of diversity jurisdiction in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the action is between citizens of different states.

**3)** **Jury/Non-Jury**

Jury.

**4)** **Length of Trial**

The parties estimate four (4) days of testimony.

**5)** **Further Proceedings**

None anticipated, other than arguments over motions in limine.

**6)** **Nature of Case**

The Plaintiff, a former employee of defendant Accenture, claims that Accenture failed to accommodate his disability, copper toxicity, upon his requested reinstatement in 2001 after he had received disability benefits under Accenture's group policy for four (4) years. He contends that Accenture failed to offer him part-time employment from March, 2001 - June, 2002, as recommended by both his physicians and the employer's medical consultants. He claims that his termination was pretextual and illegal discrimination under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60, et seq.

**7)** **Trial by Magistrate Judge**

The parties do not agree to trial by a Federal Magistrate.

**8.** **Witnesses**

    1. Todd Bennett, plaintiff, will testify as to all claims in the case. (Two hours, direct testimony)

2.  Amy Bennett, wife of Todd Bennett, will testify concerning her care for the plaintiff during his disability, her communications with the defendant and Aetna's LTD personnel and damages. (1 hour)

3.  Harley Bennett, father of the plaintiff, will testify concerning plaintiff's part-time employment at his aviation electronics firm commencing as of November, 2001. (.75 hour)

3.  Jeremy Villeneuve, a former Accenture employee who worked with plaintiff will testify concerning the defendant's overtime practices and her knowledge of plaintiff's work. (.5 hour)

5.  Jill Berquist, former Accenture employee who worked with plaintiff will testify concerning the defendant's overtime practices and her knowledge of plaintiff's work. (.5 hour)

6.  Lisa Crossley, Accenture employee in Technology group will testify concerning the defendant's overtime practices and her knowledge of plaintiff's work. (.5 hour)

7.  Timothy Farrar, former Accenture employee who worked for plaintiff will testify concerning overtime practices and his knowledge of plaintiff's supervisory style. (.5 hour)

8.  Starlene McMorrow, supervisor of plaintiff on a major project for the

State of Connecticut, will testify concerning plaintiff's work and defendant's overtime practices.(.5 hour)

9. Michelle Holt, Human Resources, Accenture, will testify concerning the plaintiff's attempt to return to work as of March, 2001, her efforts within the company to accomplish it and communications concerning the decision to terminate the plaintiff. (1 hour)

10. Janice Bebe, Human Resources, Accenture, will testify concerning her knowledge of plaintiff's claims and communications concerning the decision to terminate the plaintiff. (.5 hour)

11. Paula Miller, Hartford Benefits Liaison, Employee Transitions Team, will testify concerning her knowledge of plaintiff's claims, the company's regular procedure for return to work as a part time employee and communications concerning the decision to terminate the plaintiff. (.5 hour)

12. Mark Raymond, Accentue Government Unit, will testify concerning his meeting with the plaintiff in 2001. (.75 hour)

13. Toni Corban, Accenture, Employee Relations, will testify concerning her involvement with plaintiff's attempt to return to work and communications concerning the termination option for plaintiff. (1 hour)

14. Robert Seccombe, Accenture, Benefits, will testify concerning his actions with respect to plaintiff's claims. (.75 hour)

15. Peter Zackrisson, Accenture, U. S. Benefits, will testify concerning the benefits program, his knowledge of plaintiff's attempt to return to work and his actions. (.75 hour)

16. Cathleen Conti, Accenture, Training, Hartford, will testify concerning the availability of re-training for employees returning to work from medical leave or disability.

17. Richard Hegwood, Accenture Manager, will testify concerning options for part-time employment returning to work and his actions in plaintiff's case. (.75 hour)

18. Martin Cole, Accenture Manager, Operations, will testify concerning options for part-time employment returning to work and his actions in plaintiff's case. (.75 hour)

16. Kathy Gallo, Aetna LTD, will testify concerning contacts with Accenture in August, 2001.

17. Mary Fulton, Aetna LTD, will testify concerning contacts with Accenture in August, 2001.

18. Carrie Jo Peters, Aetna LTD Analyst, will testify concerning

        her contacts with Accenture personnel concerning the plaintiff's attempt to return to work and the defendant's decision to terminate the plaintiff.

9. **Exhibits**

    A.    Andersen Consulting Internal Resume, plaintiff..

    B.    Job Description, Consultant, Accenture.

    C.    Letter from Roger Gelfenbien to plaintiff, 8/9/96 re: plaintiff's salary increase.

    D.    Annual Review, plaintiff, 1996

    E.    Aetna LTD Benefits Determination Letter to plaintiff, 8/30/97.

    F.    E-Mails between Defendant staff in 2001 concerning the plaintiff.

    G.    E-Mail: From Paula Miller to Michelle Holt, 6/6/01, forwarded to Todd Bennett 6/12/01 re: return to work procedure and reduction in LTD benefit.

    H.    Supplemental Employer's Statement submitted by Pamela Johnson, Benefits, Accenture  (Aetna LTD  Claim information) 6/4/97.

    I.    Todd Bennett, Illness Time Summary, Pamela Johnson, 6/9/97

    J.    Gaylord Hospital, Neuropsychological Evaluation of plaintiff,  1/22/01

    K.    Gaylord Hospital, Dr. Jerrold Kaplan, Initial Evaluation, 2/08/01

    L.    Release to Work letter, Dr. Jerrold Kaplan, Gaylord Hospital, 3/5/01

    M.    Dr. Robban Sica, Letter to Aetna  LTD section, Comments on evaluation by Dr. James P. Cole re: plaintiff's medical condition, 8/20/01

    N.    Letter of termination, 2/06/02, Michele Holt to plaintiff.

    O.    Dr. Robban Sica, Letter to Aetna LTD section, 3/5/02.

    P.    LTD benefits  termination notice, Robert Seccombe,  (4/7/02)

    Q.    Letter of Termination, dated 6/28/02 from Michelle Holt,  re: effective date of termination (6/18/02)

    R.    Accenture Leave of Absence Policy (1/23/97)

    S.    Accenture Separation Policy (4/1/02)

    T.    Accenture United States Consulting Separation Benefits Plan.

    U.    Plaintiff's Tax Returns

           U-1, U-2, etc. 1996 -2004   (9 tax returns)

**10) (b) (i)**    **Proposed Voir Dire**

See Plaintiff's Voir Dire Questions attached hereto as Exhibit C

    (ii)    **Proposed Jury Instructions**

See Plaintiff's Requests for Jury Instructions attached hereto as Exhibit E.

**(c)**    **Opening Statements**

Each party wishes to make an opening statement.

THE PLAINTIFF

_____
KATRENA ENGSTROM
Fed. Bar No. Ct09444
Williams and Pattis, LLC
51 Elm St.
New Haven, CT 06510
(203) 562-9931
(203) 776-9494 fax

## CERTIFICATION

A copy of the foregoing was mailed, first class, on the date set forth above, to the following counsel of record:

Daniel Klein, Esq.
Seyfarth Shaw
Two Seaport Lane, Suite 300
Boston, MA 02110

_____
KATRENA ENGSTROM

# EXHIBIT C

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

1. This is a lawsuit for employment discrimination brought by a former computer technology consultant against Accenture, which was associated in the past with tbe Arthur Andersen accounting firm, the auditor for Enron Corporation. Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2. Is there anyone here who would prefer not to sit on a jury concerning a case which raises issues about disability discrimination?

3. Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against those they believe to be responsible? If so, please explain.

4. Have you or has anyone close to you ever been the victim of employment discrimination?

5. Have you or anyone close to you ever been denied full or part-time employment or lost a job for reasons you considered to be unfair?

6. Has anyone here or anyone close to you ever been employed by a consulting firm and do you believe that this would affect your ability to be neutral in this case?

7. Do you know or have you read anything or heard anything about this case, the plaintiff or any of the lawyers involved in the case?

8. Has anyone here or any close to you ever been employed by an attorney?

9. Would you tend to favor one side or the other in this case without regard to the evidence which may be presented?

10. Does anyone here believe that allegations of employment discrimination should be treated less seriously than other kinds of illegal activity?

11. The plaintiff is a Caucasian male. Would anyone here be prejudiced against him because of that fact?

12. Does anyone here believe that laws which prohibits discrimination on the basis of disability should be repealed or not enforced?

**EXHIBIT E**

**PLAINTIFF'S REQUESTS TO CHARGE**

The plaintiff respectfully requests the court to charge the jury as follows:

1.  Connecticut General Statute Section 46a-60 (a)(1) provides:

    It shall be a discriminatory practice in violation of this statute:

    For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's ...physical disability.

2.  To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence, either directly or indirectly, that there is evidence of intentional discrimination. Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of him. Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one reasonably to believe that a physical disability was a motivating factor in the defendants' treatment of the plaintiff. [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions § 104.03.]

3. Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's membership in a protected class was a factor in the defendants' adverse employment decision.  [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).]

4. To establish discrimination by using indirect evidence, the plaintiff must prove what is called a prima facie case of discrimination.  To establish a prima facie case, the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) that he was a member of a protected group; (2) that he sought and was qualified for the position in question; (3) that in fact the position in question was open; (4) that despite his qualifications he was rejected; (5) that subsequently either the position remained open or the employer awarded it to a person who was not a member of the protected class.  [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Legrand v. Trustees of University of Arkansas, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988); Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir. 1983); Cockrham v. South Central Bell Telephone Co., 695 F.2d 143 (5th Cir. 1983); Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir. 1984); Robinson v. Arkansas State Highway & Transportation Commission, 698 F.2d 957 (8th Cir. 1983); Lerma v. Bolger, 689 F.2d 589 (5th Cir. 1982).]

5. As to all of her employment discrimination claims, it is necessary only that the plaintiff prove that the defendant in fact took some adverse employment action against him

and that his protected status (that is, a physical disability) was a factor which played a part in the defendant's decision, that the defendant had a discriminatory purpose or motive. [Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1101 (8th Cir. 1988).]

      6.     The plaintiff is entitled to prevail in this case if he shows that discrimination was a motivating -- although not necessarily a determining -- factor in the challenged employment decisions or any one of them. This may be shown directly, by demonstrating that discrimination more likely motivated the employer's action, or indirectly, by showing that the employer's explanation is questionable. [Gallo v. Prudential Residential Services, 22 F.3d 1219, 1224 (2d Cir.1994), Devitt, etc., § 104.03.]

      7.     If the defendant satisfies its burden of proving the existence of a nondiscriminatory reason for the challenged action, the plaintiff is entitled to prevail in this action if she persuades you, by a preponderance of the evidence, that the reason or reasons offered by the defendant for the challenged action are (1) only a pretext or cover-up for what, in truth, was a discriminatory purpose; **or** (2) that the discriminatory reason more likely than not motivated the defendant. If the plaintiff has persuaded you of this, then you must decide in her favor. [Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000); Levin v. Analysis & Technology, Inc., 960 F.2d 314 (2d Cir. 1992); Medina-Munoz v. R. J. Reynolds Co., 896 F.2d 5 (1st Cir. 1990).]

      10.    If you determine that the defendant discriminated against the plaintiff, then you must determine the amount of damages that he has suffered as a result. You may

award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that he would have received had he not been discriminated against.  Basically, you have the ability to make the plaintiff whole for any wages or other benefits that he has lost as a result of the discrimination against her.  [Lorillard v. Pons, 434 U.S. 575 (1978); Faris v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985); Blum v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984); Devitt, etc., supra, §§ 104.06, 104A.11.]

      11.   You shall also calculate separately, as future damages, a monetary amount equal to the present value of the wages and benefits that the plaintiff would have earned had he not been discriminated against for that period from the date of your verdict until the date when he would have voluntarily resigned or obtained other employment. [Maxfield v. Sinclair International, 766 F.2d 788 (3d Cir. 1985); Blum v. Witco Chemical Corp., 829 F.2d 367 (3d Cir. 1987); Devitt, etc., supra, §§ 104.05, 104.06, 104A.11.]

      12.   The plaintiff has alleged that, as a result of the defendants' intentional discrimination, he has suffered mental anguish, inconvenience and humiliation.  The plaintiff has the burden of proving any compensatory damages by a preponderance of the evidence.  If you determine that the plaintiff has proven by a preponderance of the evidence that he has experienced mental anguish, inconvenience or humiliation, you may award him damages for those injuries.  The plaintiff is not required to provide medical evidence of psychological or psychiatric treatment in order to establish emotional distress.

No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced as evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation -- no more and no less. When considering the amount of monetary damages to which the plaintiff may be entitled, you should consider the nature, character, and seriousness of any mental anguish, inconvenience or humiliation he felt. You must also consider its extent or duration, as any award you make must cover the damages endured by the plaintiff since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that Mr. Bennett's emotional stress and its consequences have continued to the present time or can reasonably be expected to continue in the future. [Devitt, etc., supra, §§ 104.05, 104.06, 104A.11; Adams v. Doehler-Harvis, 144 Mich. App. 764 (1985); Freeman v. Kelvinator, Inc., 569 F. Supp. 999 (E.D. Mich. 1979); Slayton v. Michigan Host, Inc., 122 Mich. App. 411, 332 N.W.2d 498 (1983); Riethmiller v. Blue Cross, 151 Mich. App. 188, 390 N.W.2d 227 (1986).]

    13. In addition to the claims for damages already mentioned, you should consider whether the plaintiff is entitled to punitive damages. These are awarded as a punishment of a defendant and as a warning to others to keep them from following the defendant's example. You may award these damages if you determine by a preponderance of the evidence that one or more of the defendant's acts were done with either (1) actual malice,

which is nothing more nor less than intentional wrongdoing, or (2) a wanton and willful disregard for the rights of another, in other words, a deliberate act taken with knowledge that it probably will harm another and with reckless indifference to the consequences -- or, as one court has said, just not giving a damn.  If you determine that the facts justify an award of punitive damages, you should try to determine a fair, just, and reasonable amount for the plaintiff under all the circumstances.  Punitive damages are not intended to compensate a plaintiff for injuries but rather are intended to punish the defendant and to prevent similar conduct in the future.  Thus, if you award these damages, you should consider the net worth of the person or organization or institution which will pay these damages and the impact on that person, organization or institution of paying that award.  Punitive damages must bear a reasonable relationship to the plaintiff's actual injury.  However, no single numerical equation has been made to easily link punitive to compensatory damages.  In determining a reasonable relationship to the actual injury, you must consider all relevant factors.  These include:  (1) the impact or severity of the defendant's conduct; (2) the amount of time the defendant conducted itself or himself in this manner; (3) the amount of compensatory damages; (4) the potential profit the defendant may have obtained from the wrongful conduct; (5)  the attitudes and actions of the defendant or, if it is an institution, its top management, after the misconduct was discovered; (6) the effect of the damages award on the defendant's financial condition; and (7) any punishment the defendant may have shown he or it is expected to receive from

other sources.  [Levinson v. Prentice-Hall, Inc., 868 F.2d 558 (3d Cir. 1989); Brown v. M&M/Mars, 883 F.2d 505 (7th Cir. 1989); Knights Bridge Marketing Services, Inc. v. Promociones Proyectos, S.A., 728 F.2d 572 (1st Cir. 1984); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 924 n.7 (2d Cir. 1981); Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, 692 F.2d 214 (1st Cir. 1982); Hicks v. Gates Rubber Co., 833 F.ed 1406, 1419 (10th Cir. 1987); Benjamin v. United Merchants & Manufacturers, Inc., 873 F.2d 44 (2d Cir. 1989); Dominic v. Consolidated Edison of New York, 822 F.2d 1249 (2d Cir. 1987); Rose v. Hearst Magazine Division, 814 F.2d 491 (7th Cir. 1987); Burns v. Texas Refining, Inc., 890 F.2d 747 (5th Cir. 1989); Conway v. ElectroSwitch Corp., 825 F.2d 593, 597 (1st Cir. 1987); Berbraecken v. Westinghouse Electric, 881 F.2d 1041 (11th Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Devitt, etc., supra, §§ 104.07, 104A.12.]