UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:03CV0080 AVC |
| ) | |
| v. ) | |
| ) | |
| ACCENTURE LLP, ) | August 5, 2005 |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION IN LIMINE
## TO ADMIT THE MICHELE HOLT AFFIDAVIT AT TRIAL

Pursuant to Rule 807 of the Federal Rules of Evidence ("Rule 807"), the Defendant, Accenture LLP ("Defendant" or "Accenture"), hereby respectfully moves this Court, in limine, to admit the Affidavit of the late Michele Holt ("Ms. Holt") into evidence at trial in the above-captioned action. Ms. Holt's Affidavit (the "Holt Affidavit") is attached hereto as Exhibit A.

Ms. Holt, who passed away on June 9, 2005, was Accenture's primary witness in this matter. In support of this Motion, Defendant submits herewith a memorandum in support.

**ORAL ARGUMENT REQUESTED**

WHEREFORE, Defendant respectfully requests that this Court admit the Holt Affidavit pursuant to Rule 807. Alternatively, Defendant requests that the Court admit ¶¶ 6-11, 16-24, 26 and 30 of the Holt Affidavit as stipulated facts because Plaintiff already has admitted and agreed to these facts in his Rule 56(a)(2) Statement of Material Facts in Dispute.

Respectfully submitted,

**DEFENDANT
ACCENTURE LLP**

By its Attorneys,

By _/s/ Daniel B. Klein_
Lynn A. Kappelman (ct 03480)
lkappelman@seyfarth.com
Daniel B. Klein (ct 18934)
dklein@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
Fax: (617) 946-4801

Defendant's Local Counsel:
Douglas Varga, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
Bridgeport, CT 06604

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2005, a copy of the foregoing document was sent by overnight delivery to John R. Williams, Esq., John R. Williams & Associates LLC, 51 Elm Street, Suite 409, New Haven, CT 06510.

_/s/ Daniel B. Klein_
Daniel B. Klein

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD BENNETT | : | CIVIL ACTION NO. |
| | : | 3:03CV0080 (AVC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ACCENTURE, LLP | : | |
| | : | |
| | : | |
| Defendant. | : | |

## AFFIDAVIT OF MICHELE HOLT

I, Michele Holt, being duly sworn, hereby depose and say:

1. I am over eighteen years of age and understand the obligation of an oath.

2. I am aware of the action filed by the above-referenced Plaintiff, entitled <u>Bennett v. Accenture, LLP</u>, Civil Action No. 3:03CV0080.

3. I make this affidavit based upon my own personal knowledge and information assembled by me with the assistance of authorized employees and in support of Defendant Accenture, LLP's ("Accenture") motion for summary judgment filed simultaneously herewith. I attest that the assertions herein are true and correct to the best of my knowledge, information and belief. I also attest that the documents attached hereto as true and accurate copies of documents that Accenture maintained in the normal course of business.

4. I was an EEO Officer in the Hartford office of Accenture and I held that position from April 1999 until December 31, 2002.

5. The last position the Plaintiff Todd Bennett held with Accenture before beginning his short-term disability leave, which began on April 7, 1997 and ended on July 6, 1997, and his long-term disability leave, which began on July 6, 1997 and ended

on April 7, 2002, was staff consultant. Prior to the position of a staff consultant, Mr. Bennett worked as an analyst.

6. In 2001, when Mr. Bennett sought reinstatement to the positions of analyst or consultant, the essential job functions of those positions included, but were not limited to, ability to lift light materials; proficiency in applicable technologies; understanding in systems integration and interactive design; ability to work overtime, as required; ability to travel to different client locations; ability to work during business hours; proficiency in written and verbal communication skills; ability to work creatively and analytically in a problem-solving environment; ability to work independently in work and/or client settings; and ability to speak and write English proficiently.

7. On January 31, 2001, Mr. Bennett called me and informed me that his physician had released him to return to work on a modified schedule.

8. In response, I explained to Mr. Bennett that I would initiate the appropriate reinstatement procedures and call him back.

9. Shortly thereafter, I called Mr. Bennett and asked him to provide documentation to Accenture from his physician concerning Mr. Bennett's ability to return to work.

10. Mr. Bennett requested that Accenture ask his physician directly for the documentation.

11. On February 28, 2001, Paula Miller, Hartford Benefits Contact, sent a request to Mr. Bennett's physician, Dr. Jerrold Kaplan, asking for Mr. Bennett's return to

2

work date, restrictions on his work, and the duration of his restrictions. *See* fax from Paula Miller, dated February 28, 2001, attached hereto as Exhibit A.

12. Dr. Kaplan sent a letter on March 5, 2001 to Ms. Miller, stating that Mr. Bennett could begin working on March 12, 2001 on a limited basis. *See* letter from Dr. Jerrod Kaplan, dated March 5, 2001, attached hereto as Exhibit B.

13. Specifically, Dr. Kaplan outlined Mr. Bennett's restrictions, stating in relevant part:

> [Mr. Bennett] can work three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks. He should continue at that level until he is re-evaluated at Gaylord Hospital. In order to make his transition the most successful, I would suggest that his three hours per day be done for a 9 a.m. to 12 noon shift, Monday, Wednesday, and Friday. When the extra hour is added in two weeks, I would suggest that it be done also on a Monday, Wednesday, Friday schedule. . . . He should be assigned just to his home office and not be sent to other locations until he is reassessed at Gaylord Hospital. I would recommend that he be set up in an office that minimizes possible distractions. It would be helpful for Mr. Bennett to have parking available at his office location so that his fatigue can be minimized.

*See* Exhibit B.

14. I immediately began looking for a position within the Company to accommodate Mr. Bennett's medical restrictions and his skill set.

15. By this time, Mr. Bennett had been out of work for approximately four years and had no experience or training on Accenture's current systems.

16. Indeed, the technology Mr. Bennett used prior to his disability leave was significantly outdated.

17. During 2001, Accenture suffered an economic downturn, during which it implemented several workforce reductions in its Consulting and Business Practices.

3

18. In response to its economic situation, Accenture also issued a hiring freeze in its Business Practices group and deferred the start dates for its new hires.

19. Despite these economic restrictions, between March 2001 and November 2001, I contacted each of Accenture's five Consulting Market Units ("MUs") in the Hartford office in an effort to find Mr. Bennett a position in Connecticut.

20. I spoke with Andrew Burns, the People Matters ("PM") Representative for the Resources MU in Hartford. Mr. Burns indicated that he had no Resources positions available in the Connecticut office.

21. I contacted Amy Salvatore, the PM Representative for the Communications and High Technologies MU. Ms. Salvatore did not have any Communications positions available in the Connecticut office.

22. Within the Financial Services MU, I spoke with Olga Conway, the PM Representative for the Banking and Insurance Group in Hartford, and Hilary McCracken, the PM Representative for the Health Services Group in Hartford, and learned that there were no opportunities for employment available in either department.

23. There were no employment opportunities available in the Products MU in Connecticut.

24. I also contacted Tara Parisi, the PM Representative for the Government MU in Hartford. The Government MU in Hartford had a possible employment opportunity for Mr. Bennett and, therefore, Mark Raymond, an Associate Partner in the Government MU, contacted Mr. Bennett to come in for a meeting.

4

25. Mr. Raymond met with Mr. Bennett on June 1, 2001. However, Mr. Raymond could not assign Mr. Bennett to his MU because Mr. Bennett did not have any knowledge of the Peoplesoft program, the software that the Government MU currently uses on its Connecticut projects. In June 2001, knowledge of the Peoplesoft program was an essential function of the position.

26. I even searched beyond the Consulting MUs and contacted Martha Strong regarding opportunities on the Quality Client Survey Team in the Business Practices group in Connecticut. Ms. Strong informed me that the Business Practices group was under a hiring freeze order and she could not hire or transfer any person into the group.

27. I also contacted Marty Cole, the Location Lead Partner for the Company, but he also could not find Mr. Bennett a position because many of the MUs were undergoing workforce reductions.

28. Due to the state of its business and the Company's inability to locate a position for Mr. Bennett that would accommodate his work restrictions and skill sets, Accenture terminated Mr. Bennett's employment.

29. On November 7, 2001, I called Mr. Bennett's home, but he was unavailable. I spoke with Mr. Bennett's wife, who stated that she and her husband had come to the conclusion that Accenture did not have a position for him. I did not discuss Mr. Bennett's termination in detail with Mrs. Bennett at that time, but scheduled a telephone conference with Mr. and Mrs. Bennett for the following day.

30. On November 8, 2001, I called Mr. and Mrs. Bennett and informed them that Accenture was unable to find a position for Mr. Bennett and, thus, the Company had to terminate his employment.

_____
Michele Holt

Subscribed and sworn to before me
this 20 day of February 2004.

_____
Notary Public
My Commission Expires:    JANICE M. BEEBE
                          NOTARY PUBLIC
                          MY COMMISSION EXPIRES JAN. 31, 2005

6



Exhibit A



Memorandum

To:       Dr. Jerrold Kaplan, VP & Medical Director of Gaylord

From:     Paula W. Miller, Benefits Contact - Hartford Office

Date:     Wednesday, February 28, 2001

Subject:  Todd Bennett – Return to Work


Accenture is requesting you to provide the following information regarding Todd's return to work:

- Release or return to work date
- Restrictions surrounding return to work, if any
- Timeframe of outlined restrictions, if any

Please contact me at (860) 756-2584 with any questions. Please fax the information to me at (860) 756-2871.

Thank you in advance for your assistance.

Accenture 0174



Exhibit B



**Gaylord Hospital**

Gaylord/Wallingford
P.O. Box 400
Gaylord Farm Road
Wallingford, CT 06492
203 284-2800
203 284-2894 FAX

Gaylord/New Haven
One Long Wharf Drive
New Haven CT 06511
203 624-3140
203 495-8569 FAX

Gaylord/Woodbridge
Jewish Community Center
Amity Road, Route 63
Woodbridge, CT 06525
203 397-7494

March 5, 2001

VIA FACSIMILE: 860-756-2871

Paula W. Miller
Benefits Contact
Accenture
One Financial Plaza
Hartford, CT 06103

RE:  Todd Bennett
     Gaylord Medical Record # 080714

Dear Ms. Miller:

I'm responding to your memorandum asking me to clarify the specific release or return to work date for Todd Bennett. You have also asked me to indicate any specific restrictions and timeframe for these restrictions.

Todd Bennett is released for work as of Monday, March 12, 2001. He can work three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks. He should continue at that level until he is re-evaluated at Gaylord Hospital. In order to make his transition the most successful, I would suggest that his three hours per day be done for a 9 am to 12 noon shift, Monday, Wednesday, and Friday. When the extra hour is added in two weeks, I would suggest that it be done also on a Monday, Wednesday, Friday schedule. This will allow Mr. Bennett to rest on his off days. He should be assigned just to his home office and not be sent out to other locations until he is reassessed at Gaylord Hospital. I would recommend that he be set up in an office that minimizes possible distractions.

It would be helpful for Mr. Bennett to have parking available at his office location so that his fatigue can be minimized.

If you need any further clarification, please feel free to give me a call at 203-284-2702 or fax me a communication at 203-284-2894.

Sincerely,

Jerrold L. Kaplan, M.D.
Vice President and Medical Director

JLK:kb

Accenture 0172