UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:03CV0080 AVC |
| | ) | |
| v. | ) | |
| | ) | |
| ACCENTURE LLP, | ) | August 5, 2005 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO ADMIT THE MICHELE HOLT AFFIDAVIT AT TRIAL

Pursuant to Rule 807 of the Federal Rules of Evidence ("Rule 807"), the Defendant,

Accenture LLP ("Defendant," "Accenture" or the "Company"), hereby respectfully moves this

Court, in limine, to admit the Affidavit of the late Michele Holt ("Ms. Holt") into evidence at

trial in the above-captioned action. Ms. Holt's Affidavit (the "Holt Affidavit") is attached hereto

as Exhibit A. The Court should admit the Holt Affidavit for the reasons set forth below.

First, as a formal affidavit, the Holt Affidavit possesses circumstantial guarantees of

trustworthiness and reliability and, therefore, is admissible under Rule 807. The Holt Affidavit

is the most probative evidence concerning whether Accenture and Ms. Holt made good faith

efforts to accommodate Plaintiff Todd Bennett's ("Plaintiff" or "Mr. Bennett") purported

disability, and that is the core factual issue in this case. As a result of the tragic and exceptional

circumstances of Ms. Holt's sudden tragic passing, this Court should admit the Holt Affidavit to

best serve the interests of justice. Moreover, Accenture has provided Plaintiff ample notice of its

intent to offer the Holt Affidavit at trial in order to provide Plaintiff with a fair opportunity to

prepare accordingly. Finally, Accenture exercised due diligence to procure Ms. Holt's

attendance and testimony at trial, even attempting to arrange for her deposition upon learning of her serious condition. Unfortunately, soon after the parties learned of Ms. Holt's grave condition, Ms. Holt passed away. Accordingly, the Court should admit the Holt Affidavit in lieu of her live testimony because she was Accenture's most material witness. In further support, Defendant provides as follows:

## BACKGROUND AND PROCEDURAL POSTURE

Mr. Bennett, a former technology consultant for Accenture, claims that the Company failed to accommodate his alleged disability, copper toxicity poisoning, when he requested reinstatement in 2001 after a four-year disability leave. Specifically, Mr. Bennett contends that Accenture failed to accommodate him when the Company could not find him an available part-time position within his medical restrictions.

Ms. Holt served as Accenture's EEO Officer in the Company's Hartford office at the time Mr. Bennett requested reinstatement in 2001. In this capacity, Ms. Holt attempted to accommodate Mr. Bennett's purported disability by thoroughly searching Accenture's various business units for a vacant, part-time position within Mr. Bennett's medical restrictions and skill set. After Ms. Holt was unable to locate a position for Mr. Bennett, Ms. Holt informed Mr. Bennett that Accenture was terminating his employment.

Accenture anticipated that Ms. Holt would testify at trial concerning (i) her efforts to find Mr. Bennett an available position that would accommodate his medical restrictions and skill set, (ii) the results of her search, and (iii) the Company's decision to terminate Mr. Bennett's employment and her communications with Mr. Bennett about the termination. Accordingly, as the key person who led Accenture's efforts to accommodate Mr. Bennett, and a decision maker concerning Mr. Bennett's discharge, Ms. Holt was Accenture's primary witness. Because Plaintiff did not take <u>any</u> depositions during the two and one-half years this case has been

2

pending, Ms. Holt has not testified under oath in this action. However, Ms. Holt executed the

Holt Affidavit under sworn oath, which Accenture submitted with its Motion for Summary

Judgment on February 24, 2004.

On April 19, 2005, the Court notified the parties that jury selection in this matter was

scheduled for May 5, 2005. Upon immediately notifying its witnesses of the trial date,

Accenture's counsel learned that Ms. Holt was gravely ill and would not be able to testify at

trial.[1] See Affidavit of Daniel Klein, attached hereto as Exhibit B ("Klein Aff."), at ¶¶ 3-4.

Defendant's counsel notified Plaintiff's counsel about Ms. Holt's serious condition, and as a

result, the parties jointly moved for a 30-day continuance of the trial date to allow Defendant

time to assess Ms. Holt's health and ability to testify. The Court granted this motion and re-

scheduled jury selection for June 2, 2005.

Accenture tried to arrange for Ms. Holt to testify by some means other than at trial. Klein

Aff., at ¶ 6. On May 5, 2005, Accenture's counsel advised Plaintiff's counsel that because Ms.

Holt's condition had reached such a grave state, she would be unable to testify at trial or even at

a deposition. See Letter dated May 5, 2005 from Daniel B. Klein to John R. Williams, attached

to Klein Aff. as Exhibit 1; Klein Aff., at ¶¶ 7-8. Pursuant to Rule 807, Defendant further notified

Plaintiff that Accenture intended to move for admission of Ms. Holt's Affidavit at trial in lieu of

her live testimony. Id.

Notwithstanding, Accenture again attempted to determine whether Ms. Holt might be

able to endure a brief deposition and cross-examination. Klein Aff., at ¶ 10. However,

---

[1] For privacy purposes, Ms. Holt's specific condition is not included herein. However, Accenture can
share this information with the Court separately, if necessary.

Accenture learned that Ms. Holt's condition had reached a near-fatal state.[2] <u>Id.</u>, at ¶ 11. On June 9, 2005, Ms. Holt sadly passed away. <u>Id.</u>, at ¶ 12.

## ARGUMENT

It is well established that hearsay statements may be admissible if they fall within a recognized exception to the hearsay rule. <u>See</u> Fed.R.Evid. 803, 804, 807. Rule 807, the residual hearsay exception, provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 807.[3] The courts also consider whether the proponent of the hearsay testimony has exercised due diligence and made a good faith effort to preserve the declarant's testimony.

The Court should admit the Holt Affidavit because it meets each of Rule 807's five requirements, and Accenture exercised due diligence and made good faith efforts to preserve Ms. Holt's testimony.

---

[2] On May 18, 2005, Plaintiff moved to continue the trial date. On May 24, 2005, the Court granted this motion and re-scheduled jury selection for September 1, 2005.

[3] It is worth noting that in the state courts in this jurisdiction, C.G.S. § 52-172 permits the admission of statements of deceased persons into evidence as an exception to the hearsay rule. C.G.S. § 52-172.

I.    THE HOLT AFFIDAVIT SATISFIES THE REQUIREMENTS OF
      TRUSTWORTHINESS, MATERIALITY, PROBATIVE IMPORTANCE, THE
      INTERESTS OF JUSTICE AND NOTICE.

Hearsay statements normally are inadmissible because of four categories of risk to which

hearsay statements are susceptible: (1) insincerity, (2) faulty perception, (3) faulty memory and

(4) faulty narration. Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 233 (2d Cir. 1999); Steinberg,

M.D. v. Obstetrics-Gynecological & Infertility Group, 260 F. Supp.2d 492, 496-497 (D. Conn.

2003). However, hearsay statements "need not be free from all four categories of risk to be

admitted under Rule 807" because Rule 807's five requirements minimize these dangers. See

Schering Corp., 189 F.3d at 233. Therefore, in order for hearsay evidence to be admissible under

Rule 807, it must satisfy the five requirements of "'trustworthiness, materiality, probative

importance, the interests of justice and notice.'" Schering Corp., 189 F.3d at 231 (quoting

United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993) (internal citation omitted)); see

Steinberg, 260 F. Supp.2d at 496-497.

Rule 807's requirements ensure that the Rule will be used only in exceptional

circumstances. See Schering Corp., 189 F.3d at 232. An exceptional circumstance exists even if

the proffered evidence is not the only evidence, but is clearly the strongest and most probative on

the matter, so long as it possesses the requisite guarantees of trustworthiness. See Steinberg, 260

F. Supp.2d at 496-497 (letter from deceased declarant to litigation counsel describing facts of the

case and her conclusions and impressions admitted because it was the strongest and most

probative on the matter even though not the only evidence);[4] Bohler-Uddeholm America, Inc. v.

---

[4] In Steinberg, M.D. v. Obstetrics-Gynecological & Infertility Group, the plaintiff's former attorney, who
was not litigation counsel and who passed away before trial, wrote a letter to litigation counsel describing
the facts of the case so that litigation counsel could adequately represent the plaintiff. 189 F. Supp.2d
492, 496-497 (D. Conn. 2003). Under these circumstances, the Court found that the letter satisfied the
trustworthiness requirement. See id.

Ellwood Group, Inc., 247 F.3d 79, 112-114 (3d Cir. 2001) (affidavit of deceased declarant

admitted into evidence because only evidence available to rebut material fact).

Like the cases cited above, in light of the exceptional circumstances of Ms. Holt's tragic

and untimely passing, the Holt Affidavit provides the strongest and most probative evidence of

the core events at issue in this case, while possessing the requisite guarantees of trustworthiness.

See Schering Corp., 189 F.3d at 232; Steinberg, 260 F. Supp.2d at 496-497; Bohler-Uddeholm,

247 F.3d at 112-114.  Moreover, because the Holt Affidavit satisfies Rule 807's five

requirements of "trustworthiness, materiality, probative importance, the interest of justice and

notice," the Affidavit minimizes the classic hearsay risks.  See Schering Corp., 189 F.3d at 231-

233; Steinberg, 260 F. Supp.2d at 496-497.

**A.      The Holt Affidavit Contains Circumstantial Guarantees of Trustworthiness And Reliability Equivalent To Rules 803 and 804.**

In evaluating a hearsay statement's trustworthiness, the Court looks at the circumstantial

guarantees of trustworthiness that existed at the time the statement was made.  See, e.g., Bohler-

Uddeholm, 247 F.3d at 112-114 (affidavit made under oath and penalties of perjury, declarant

aware of pending litigation at time of statement, statement based on personal observation,

declarant not employed by proponent and had no financial interest in litigation's outcome,

affidavit partially corroborated by other evidence, and declarant's position and background

qualified him to make the assertions); State of Conn. v. Aaron L., 272 Conn. 798, 812-815, 865

A.2d 1135, 1145-1147 (2005) (citing Idaho v. Wright, 497 U.S. 805, 822, 110 S. Ct. 3139

(1990)) (statement to mother when 2 ½ years old was spontaneous and used terminology

appropriate for a child of declarant's age); Steinberg, 260 F. Supp.2d at 496-497 (deceased

former attorney had no motive to fabricate or exaggerate description of the case in letter

intended to assist litigation counsel to adequately represent the plaintiff).

6

Moreover, extrajudicial statements contained in formalized testimonial materials, such as an affidavit, possess circumstantial guarantees of trustworthiness because they would lead an objective declarant to reasonably believe that his or her statement would be available for use later at trial. See Bohler-Uddeholm, 247 F.3d at 112-114 (affidavit of deceased declarant admitted because more probative than other evidence and opponent had ways to rebut it, among other factors). In addition to the formalized nature of the Holt Affidavit, the following circumstances mitigate in favor of its trustworthiness: (1) Ms. Holt was known and named; (2) she made her statement under sworn oath; (3) she was aware of the pending litigation at the time she made the statement and, thus, knew that her assertions were subject to cross examination; (4) Ms. Holt based her statements on personal observation, and she had no motive to fabricate or convey any inaccurate information; (5) she had no financial interest in the litigation's outcome; (6) other evidence corroborated Ms. Holt's Affidavit; and (7) as the Company's EEO Officer responsible for attempting to accommodate Mr. Bennett, Ms. Holt was qualified to make the assertions contained in her Affidavit. See id. at 112-114; Aaron, 865 A.2d at 1145-1147; Steinberg, 260 F. Supp.2d at 496-497.

Plaintiff has known the declarant, Ms. Holt, since at least 2001, when Mr. Bennett and Ms. Holt regularly conversed regarding Ms. Holt's efforts to find Mr. Bennett a vacant, part-time position that would accommodate his medical restrictions and skill set.[5] Id.; Deposition of Todd Bennett, attached hereto as Exhibit C ("Bennett Tr."), at 112, 116-138. Further, Ms. Holt executed her Affidavit under sworn oath. At the time she made her statement, February 20,

---

[5] Plaintiff also has known since 2001 that Ms. Holt was the key witness to the events in question – i.e., Accenture's efforts to accommodate Mr. Bennett. In addition, Accenture identified Ms. Holt as the key participant in the Company's accommodation efforts in its Position Statement submitted to the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which Plaintiff received on or about June 28, 2002.

2004, Ms. Holt was well aware of the pending litigation and knew that her assertions ultimately would be subject to cross-examination. Id.

Ms. Holt based the statements contained in her Affidavit on her personal observations and efforts to accommodate Mr. Bennett's purported disability and Ms. Holt had no reason to fabricate or convey any inaccurate information. Id. While Accenture employed Ms. Holt at the time of her Affidavit, she had no financial interest in the litigation's outcome. Id. Moreover, Mr. Bennett's own deposition testimony, his handwritten notes and Plaintiff's Rule 56(a)(2) Statement of Material Facts In Dispute do not dispute, and indeed all of them corroborate, the material assertions contained in the Holt Affidavit. See Plaintiff's Rule 56(a)(2) Statement of Material Facts, attached hereto as Exhibit D ("Plaintiff's Facts"), at ¶¶ 28-34, 36, 38-46, 49, 56; Bennett Tr., at 116-138. Finally, Ms. Holt clearly was qualified to make the assertions contained in her Affidavit, as these statements concerned her efforts as EEO Manager to reasonably accommodate Mr. Bennett.

Accordingly, the Holt Affidavit contains sufficient circumstantial guarantees of trustworthiness and reliability.

### B.    The Holt Affidavit Concerns Material Facts And Is More Probative Than Any Other Evidence, And Its Admission Will Best Serve The Interests Of Justice.

Ms. Holt's Affidavit recounts her efforts to reasonably accommodate Mr. Bennett's purported disability. Ms. Holt's efforts to do so are at the core of Plaintiff's claim that Accenture failed to reasonably accommodate his purported disability. The Holt Affidavit, therefore, clearly concerns material facts. See Schering Corp., 189 F.3d at 232; Steinberg, 260 F. Supp.2d at 496-497; Bohler-Uddeholm, 247 F.3d at 112-114.

The Holt Affidavit is also more probative of these facts than any other evidence Defendant can reasonably procure. See id. Ms. Holt was the individual making all of the

inquiries regarding potential vacant part-time positions for Mr. Bennett, and she was the only person communicating with Mr. Bennett about her efforts. No other witness or document can relay Ms. Holt's account as powerfully as Ms. Holt's own sworn testimony.

Further, the general purposes of the Rules of Evidence and the interests of justice, as well as pure fairness, will be served best by admitting the Holt Affidavit. See id. The Holt Affidavit offers the only sworn testimony from Accenture's key witness in this matter. Plaintiff did not depose any witnesses during discovery in this matter, including Ms. Holt, whom Plaintiff clearly knew was Accenture's most important witness. The Court should not deprive the jury from hearing Ms. Holt's account firsthand simply because of her unfortunate passing.

Indeed, Mr. Bennett does not dispute the material assertions contained in Ms. Holt's Affidavit. Rather, he admittedly held multiple conversations with Ms. Holt concerning her efforts to find him an available position with the Company in 2001, as he acknowledged during his deposition. Bennett Tr. 116-138. Mr. Bennett further testified that he did not have any reason to believe that Ms. Holt was lying to him. Bennett Tr., 133. Moreover, in Plaintiff's Rule 56(a)(2) Statement of Material Facts in Dispute, Plaintiff expressly agreed to the material facts asserted by Defendant and contained in the Holt Affidavit concerning Ms. Holt's efforts to accommodate Mr. Bennett. See Ex. D, Plaintiff's Facts, at ¶¶ 28-34, 36, 38-46, 49, 56 (citing and agreeing to Holt Affidavit, at ¶¶ 6-11, 16-24, 26, 30).

Finally, Plaintiff will have opportunities at trial to attempt to rebut the substance of the Holt Affidavit. For example, Plaintiff can present witnesses and/or cross-examine Defendant's witnesses who spoke with Ms. Holt about whether there were any vacant, part-time positions within their respective business units. Accordingly, the general purposes of the Rules of Evidence and the interests of justice dictate that the Court admit the Holt Affidavit at trial.

**C.**   **Accenture Has Provided Plaintiff Ample Notice of Intent To Offer The Holt Affidavit Into Evidence At Trial.**

A party satisfies Rule 807's notice requirement if it provides the adverse party notice of the statement sufficiently in advance of trial to provide the adverse party with a fair opportunity to prepare to meet it.  Fed. R. Evid. 807; see United States v. Ruffin, 575 F.2d 346, 358-59 (2d Cir. 1978) (reversing conviction on count to which Rule 803(24) evidence pertained where proponent failed to provide pretrial notice); Steinberg, 260 F. Supp.2d at 497 (adequate notice where letter was included in proponent's opposition to opponent's summary judgment motion and formed basis of opponent's motion to strike); Bohler-Uddeholm, 247 F.3d at 113 (sufficient notice when moving party proffered the affidavit months prior to trial); Furtado v. Bishop, 604 F.2d 80, 91-93 (1st Cir. 1979), cert. denied 100 S.Ct. 710, 444 U.S. 1035 (1980) (lack of pre-trial notice mitigated where opposing party had affidavit for seven and a half years as it was included in proponent's motion for injunctive relief and was raised in amended complaint, and opposing counsel's comment revealed he anticipated the affidavit would be proffered).

Accenture provided Plaintiff ample notice that it intended to seek admission of the Holt Affidavit.  See id.  Accenture first provided Plaintiff notice on May 5, 2005 of its intention to seek admission of the Affidavit, approximately four months prior to the currently scheduled September 2005 trial.  Moreover, Plaintiff has possessed the Holt Affidavit since February 24, 2004, when Plaintiff received it with Defendant's Motion for Summary Judgment.

Plaintiff's position[6] that he will not have the opportunity to cross-examine Ms. Holt as to the substance of her Affidavit fails.  Mr. Bennett has known the substance of the Holt Affidavit (*i.e.*, Ms. Holt's account of her efforts to accommodate Mr. Bennett) since 2001, when Ms. Holt

---

[6] On May 13, 2005, Plaintiff declined Accenture's request to stipulate to this Motion on the basis that he did not have the opportunity to cross-examine Ms. Holt about the Affidavit.

continually informed Mr. Bennett of her efforts. See Bennett Tr., 116-138. Plaintiff again

reviewed Ms. Holt's account of her efforts through the Position Statement submitted by

Accenture to the CHRO on June 28, 2002. Yet, despite knowing Ms. Holt's role and account,

and that she was the key witness to the central events from which Mr. Bennett's claims arose,

Plaintiff declined to take Ms. Holt's deposition during discovery in this action. Thereafter, Mr.

Bennett received the Holt Affidavit on February 24, 2004, knowing full well that Ms. Holt was

highly likely to testify at trial if summary judgment failed. Approximately one and a half years

later, Plaintiff now has the audacity to assert that he has not had the opportunity to cross-examine

Ms. Holt. The Court should not prejudice Accenture because Plaintiff opted not to depose Ms.

Holt when on notice of her account and key role.

## II.    ACCENTURE USED DUE DILIGENCE TO PROCURE MS. HOLT'S ATTENDANCE AND TESTIMONY AT TRIAL AND TO PREVENT THE LOSS OF FACTS CONTAINED IN HER AFFIDAVIT.

The courts also consider whether the proponent of the hearsay testimony has exercised

due diligence and made a good faith effort to preserve the declarant's testimony. See State v.

Sullivan, No. CR01106675, 2005 Conn. Super. LEXIS 720, 49 (Conn. Super. Ct. Mar. 11, 2005)

(citing State v. Summerville, 13 Conn.App. 175, 180, 535 A.2d 818 (1988)) (proponent of

hearsay testimony must make good faith effort to procure declarant's attendance to satisfy due

diligence requirement). Accenture exercised due diligence and made good faith efforts to

preserve Ms. Holt's testimony once it learned that she might be unavailable to testify. See id.

Accenture attempted in good faith to depose Ms. Holt when the Company learned about her

condition. See Klein Aff., at ¶¶ 5-6. Indeed, both parties jointly moved for a continuance to

postpone the trial date to allow Accenture to assess Ms. Holt's status and ability to testify.

Defendant never wavered in its efforts to have Ms. Holt testify at trial. Once Accenture learned

of the gravity of Ms. Holt's medical condition, it even communicated with Ms. Holt's caregivers

to determine her willingness and ability to testify at a brief deposition in her own home. <u>Id.</u>, at ¶ 10. However, within days, the seriousness of Ms. Holt's condition made her unable to testify even at a deposition. <u>Id.</u>, at ¶ 11. Shortly thereafter, Ms. Holt sadly passed away on June 9, 2005. <u>Id.</u>, at ¶ 12. Accordingly, Accenture made good faith efforts to preserve Ms. Holt's testimony upon learning of her unavailability. <u>See id.</u>

## CONCLUSION

In sum, the Holt Affidavit possesses sufficient circumstantial guarantees of trustworthiness and reliability. Moreover, the Holt Affidavit concerns material facts and is substantially more probative than other evidence. Under the circumstances, by admitting it, this Court would best serve the general purposes of the Rules of Evidence and the interests of justice. Accenture has provided Plaintiff ample and sufficient notice of its intent to offer the Holt Affidavit at trial, and Accenture used due diligence to procure Ms. Holt's attendance and testimony at trial. The Court, therefore, should admit the Holt Affidavit at trial pursuant to Rule 807.

WHEREFORE, Defendant respectfully requests that this Court admit Ms. Holt's Affidavit pursuant to Rule 807, the residual exception to the hearsay rule. Alternatively, Defendant requests that the Court admit ¶¶ 6-11, 16-24, 26 and 30 of the Holt Affidavit as stipulated facts because Plaintiff already has admitted and agreed to these facts in his Rule 56(a)(2) Statement of Material Facts in Dispute.

Respectfully submitted,

**DEFENDANT
ACCENTURE LLP**

By its Attorneys,


By _____
    Lynn A. Kappelman (ct 03480)
     lkappelman@seyfarth.com
    Daniel B. Klein (ct 18934)
     dklein@seyfarth.com
    SEYFARTH SHAW LLP
    Two Seaport Lane, Suite 300
    Boston, MA 02210
    (617) 946-4800
    Fax: (617) 946-4801


    Defendant's Local Counsel:
    Douglas Varga, Esq.
    Zeldes, Needle & Cooper
    1000 Lafayette Blvd.
    Bridgeport, CT 06604


## CERTIFICATE OF SERVICE

    I hereby certify that on August 5, 2005, a copy of the foregoing document was sent by overnight delivery to John R. Williams, Esq., John R. Williams & Associates LLC, 51 Elm Street, Suite 409, New Haven, CT 06510.

_____
Daniel B. Klein

13

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TODD BENNETT              :    CIVIL ACTION NO.
                                  :    3:03CV0080 (AVC)

            Plaintiff,       :

v.                             :

ACCENTURE, LLP           :

                                  :

           Defendant.      :

## AFFIDAVIT OF MICHELE HOLT

I, Michele Holt, being duly sworn, hereby depose and say:

1.    I am over eighteen years of age and understand the obligation of an oath.

2.    I am aware of the action filed by the above-referenced Plaintiff, entitled <u>Bennett v. Accenture, LLP</u>, Civil Action No. 3:03CV0080.

3.    I make this affidavit based upon my own personal knowledge and information assembled by me with the assistance of authorized employees and in support of Defendant Accenture, LLP's ("Accenture") motion for summary judgment filed simultaneously herewith. I attest that the assertions herein are true and correct to the best of my knowledge, information and belief. I also attest that the documents attached hereto as true and accurate copies of documents that Accenture maintained in the normal course of business.

4.    I was an EEO Officer in the Hartford office of Accenture and I held that position from April 1999 until December 31, 2002.

5.    The last position the Plaintiff Todd Bennett held with Accenture before beginning his short-term disability leave, which began on April 7, 1997 and ended on July 6, 1997, and his long-term disability leave, which began on July 6, 1997 and ended

on April 7, 2002, was staff consultant. Prior to the position of a staff consultant, Mr. Bennett worked as an analyst.

6.    In 2001, when Mr. Bennett sought reinstatement to the positions of analyst or consultant, the essential job functions of those positions included, but were not limited to, ability to lift light materials; proficiency in applicable technologies; understanding in systems integration and interactive design; ability to work overtime, as required; ability to travel to different client locations; ability to work during business hours; proficiency in written and verbal communication skills; ability to work creatively and analytically in a problem-solving environment; ability to work independently in work and/or client settings; and ability to speak and write English proficiently.

7.    On January 31, 2001, Mr. Bennett called me and informed me that his physician had released him to return to work on a modified schedule.

8.    In response, I explained to Mr. Bennett that I would initiate the appropriate reinstatement procedures and call him back.

9.    Shortly thereafter, I called Mr. Bennett and asked him to provide documentation to Accenture from his physician concerning Mr. Bennett's ability to return to work.

10.    Mr. Bennett requested that Accenture ask his physician directly for the documentation.

11.    On February 28, 2001, Paula Miller, Hartford Benefits Contact, sent a request to Mr. Bennett's physician, Dr. Jerrold Kaplan, asking for Mr. Bennett's return to

work date, restrictions on his work, and the duration of his restrictions. *See* fax from Paula Miller, dated February 28, 2001, attached hereto as Exhibit A.

12. Dr. Kaplan sent a letter on March 5, 2001 to Ms. Miller, stating that Mr. Bennett could begin working on March 12, 2001 on a limited basis. *See* letter from Dr. Jerrod Kaplan, dated March 5, 2001, attached hereto as Exhibit B.

13. Specifically, Dr. Kaplan outlined Mr. Bennett's restrictions, stating in relevant part:

> [Mr. Bennett] can work three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks. He should continue at that level until he is re-evaluated at Gaylord Hospital. In order to make his transition the most successful, I would suggest that his three hours per day be done for a 9 a.m. to 12 noon shift, Monday, Wednesday, and Friday. When the extra hour is added in two weeks, I would suggest that it be done also on a Monday, Wednesday, Friday schedule. . . . He should be assigned just to his home office and not be sent to other locations until he is reassessed at Gaylord Hospital. I would recommend that he be set up in an office that minimizes possible distractions. It would be helpful for Mr. Bennett to have parking available at his office location so that his fatigue can be minimized.

*See* Exhibit B.

14. I immediately began looking for a position within the Company to accommodate Mr. Bennett's medical restrictions and his skill set.

15. By this time, Mr. Bennett had been out of work for approximately four years and had no experience or training on Accenture's current systems.

16. Indeed, the technology Mr. Bennett used prior to his disability leave was significantly outdated.

17. During 2001, Accenture suffered an economic downturn, during which it implemented several workforce reductions in its Consulting and Business Practices.

18.    In response to its economic situation, Accenture also issued a hiring freeze in its Business Practices group and deferred the start dates for its new hires.

19.    Despite these economic restrictions, between March 2001 and November 2001, I contacted each of Accenture's five Consulting Market Units ("MUs") in the Hartford office in an effort to find Mr. Bennett a position in Connecticut.

20.    I spoke with Andrew Burns, the People Matters ("PM") Representative for the Resources MU in Hartford. Mr. Burns indicated that he had no Resources positions available in the Connecticut office.

21.    I contacted Amy Salvatore, the PM Representative for the Communications and High Technologies MU. Ms. Salvatore did not have any Communications positions available in the Connecticut office.

22.    Within the Financial Services MU, I spoke with Olga Conway, the PM Representative for the Banking and Insurance Group in Hartford, and Hilary McCracken, the PM Representative for the Health Services Group in Hartford, and learned that there were no opportunities for employment available in either department.

23.    There were no employment opportunities available in the Products MU in Connecticut.

24.    I also contacted Tara Parisi, the PM Representative for the Government MU in Hartford. The Government MU in Hartford had a possible employment opportunity for Mr. Bennett and, therefore, Mark Raymond, an Associate Partner in the Government MU, contacted Mr. Bennett to come in for a meeting.

25.    Mr. Raymond met with Mr. Bennett on June 1, 2001. However, Mr. Raymond could not assign Mr. Bennett to his MU because Mr. Bennett did not have any knowledge of the Peoplesoft program, the software that the Government MU currently uses on its Connecticut projects. In June 2001, knowledge of the Peoplesoft program was an essential function of the position.

26.    I even searched beyond the Consulting MUs and contacted Martha Strong regarding opportunities on the Quality Client Survey Team in the Business Practices group in Connecticut. Ms. Strong informed me that the Business Practices group was under a hiring freeze order and she could not hire or transfer any person into the group.

27.    I also contacted Marty Cole, the Location Lead Partner for the Company, but he also could not find Mr. Bennett a position because many of the MUs were undergoing workforce reductions.

28.    Due to the state of its business and the Company's inability to locate a position for Mr. Bennett that would accommodate his work restrictions and skill sets, Accenture terminated Mr. Bennett's employment.

29.    On November 7, 2001, I called Mr. Bennett's home, but he was unavailable. I spoke with Mr. Bennett's wife, who stated that she and her husband had come to the conclusion that Accenture did not have a position for him. I did not discuss Mr. Bennett's termination in detail with Mrs. Bennett at that time, but scheduled a telephone conference with Mr. and Mrs. Bennett for the following day.

30. On November 8, 2001, I called Mr. and Mrs. Bennett and informed them that Accenture was unable to find a position for Mr. Bennett and, thus, the Company had to terminate his employment.

_Michele B Holt_
Michele Holt

Subscribed and sworn to before me
this 20 day of February 2004.

_Janice M. Beebe_
Notary Public
My Commission Expires:

JANICE M. BEEBE
NOTARY PUBLIC
MY COMMISSION EXPIRES JAN. 31, 2005

6

Exhibit A

 **accenture**

Memorandum

**To:**       Dr. Jerrold Kaplan, VP & Medical Director of Gaylord

**From:**    Paula W. Miller, Benefits Contact – Hartford Office

**Date:**    Wednesday, February 28, 2001

**Subject:** Todd Bennett – Return to Work

Accenture is requesting you to provide the following information regarding Todd's return to work:

- Release or return to work date
- Restrictions surrounding return to work, if any
- Timeframe of outlined restrictions, if any

Please contact me at (860) 756-2584 with any questions.  Please fax the information to me at (860) 756-2871.

Thank you in advance for your assistance.

Accenture 0174

Exhibit B

 GAYLORD

Gaylord Hospital

Gaylord/Wallingford
P.O. Box 400
Gaylord Farm Road
Wallingford, CT 06492
203 284-2800
205 284-2894 FAX

Gaylord/New Haven
One Long Wharf Drive
New Haven, CT 06511
203 624-3140
203 495-8569 FAX

Gaylord/Woodbridge
Jewish Community Center
Amity Road, Route 63
Woodbridge, CT 06525
205 397-7494

March 5, 2001

VIA FACSIMILE:  860-756-2871

Paula W. Miller
Benefits Contact
Accenture
One Financial Plaza
Hartford, CT  06103

RE:   Todd Bennett
        Gaylord Medical Record # 080714

Dear Ms. Miller:

I'm responding to your memorandum asking me to clarify the specific release or return to work date for Todd Bennett.  You have also asked me to indicate any specific restrictions and timeframe for these restrictions.

Todd Bennett is released for work as of Monday, March 12, 2001.  He can work three hours per day, three days per week for the first two weeks and then increase to four hours per day, three days per week for the next two weeks.  He should continue at that level until he is re-evaluated at Gaylord Hospital.  In order to make his transition the most successful, I would suggest that his three hours per day be done for a 9 am to 12 noon shift, Monday, Wednesday, and Friday.  When the extra hour is added in two weeks, I would suggest that it be done also on a Monday, Wednesday, Friday schedule.  This will allow Mr. Bennett to rest on his off days.  He should be assigned just to his home office and not be sent out to other locations until he is reassessed at Gaylord Hospital.  I would recommend that he be set up in an office that minimizes possible distractions.

It would be helpful for Mr. Bennett to have parking available at his office location so that his fatigue can be minimized.

If you need any further clarification, please feel free to give me a call at 203-284-2702 or fax me a communication at 203-284-2894.

Sincerely,

Jerrold L. Kaplan, M.D.
Vice President and Medical Director

JLK:kb

Accenture 0172

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT,                          ) | |
|                                        ) | |
|          Plaintiff,                    ) | Civil Action No. 3:03CV0080 AVC |
|                                        ) | |
| v.                                     ) | |
|                                        ) | |
| ACCENTURE LLP,                         ) | August 5, 2005 |
|                                        ) | |
|          Defendant.                    ) | |

## <u>AFFIDAVIT OF DANIEL B. KLEIN</u>

I, Daniel B. Klein, being duly sworn, do hereby depose and state as follows:

1.      I am over 18 years of age and I understand the obligation of an oath.

2.      I am an attorney with the law firm of Seyfarth Shaw LLP, the firm representing the Defendant, Accenture LLP, in the above-captioned matter ("Defendant" or "Accenture").

3.      On April 19, 2005, the Court notified the parties that jury selection in this matter was scheduled for May 5, 2005.

4.      That day, upon notifying Accenture of the trial date, I learned that our most material witness, Michele Holt, Accenture's EEO Officer, was gravely ill and would be unable to testify at trial.[1]  Ms. Holt had been out of work on disability leave since the Fall of 2004. However, Accenture did not learn until about one week prior to my April 19, 2005 inquiry that Ms. Holt's condition had reached a grave state and that she would be unable to return to work.

5.      On or about April 22, 2005, I notified Plaintiff's counsel, John Williams, about Ms. Holt's serious condition, and as a result, the parties jointly moved for a 30-day continuance

---

[1] For privacy purposes, I have not specified Ms. Holt's specific condition herein.  However, Accenture can share this information with the Court separately, if necessary.

of the trial date to allow Defendant time to assess Ms. Holt's health and ability to testify in some manner. On April 27, 2005, the Court granted this motion and re-scheduled jury selection for June 2, 2005.

6.      In the interim, through our contacts at Accenture, we tried to assess whether Ms. Holt might be able and willing to testify by some other means. However, we learned that Ms. Holt was unable to testify.

7.      In a letter dated May 5, 2005, I advised Plaintiff's counsel that because Ms. Holt's condition had reached such a grave state, she would be unable to testify at trial or even at a deposition. See Letter dated May 5, 2005 from Daniel B. Klein to John R. Williams, attached hereto as Exhibit 1 (a reference to Ms. Holt's condition therein has been redacted).

8.      In this letter, pursuant to Rule 807 of the Federal Rules of Evidence, I further notified Plaintiff's counsel that Accenture intended to move for admission of Ms. Holt's Affidavit, which Defendant submitted to the Court and served upon counsel with its Motion for Summary Judgment on February 24, 2004, at trial in lieu of her live testimony. I asked counsel whether Plaintiff would be willing to stipulate to a motion to admit Ms. Holt's Affidavit.

9.      On May 13, 2005, Plaintiff's counsel notified me by e-mail that Plaintiff would not stipulate to the admission of Ms. Holt's Affidavit.

10.      Notwithstanding Defendant's intention to move to admit Ms. Holt's Affidavit in lieu of her live testimony, we again attempted to determine whether Ms. Holt might be able and willing to endure a brief deposition, including cross-examination by Plaintiff's counsel, at her home concerning her Affidavit.

11.      However, on May 19, 2005, we learned that Ms. Holt's condition had reached a near-fatal state, and that she would be unable to testify even at a brief deposition.

2

12.     On June 9, 2005, Ms. Holt passed away.

Daniel B. Klein

Subscribed and sworn to
before me this 5th day of August, 2005.

Notary Public

KIM HAARER
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISION EXPIRES 5/18/2008

3

EXHIBIT 1



Writer's direct phone
    (617) 946-4840

Writer's e-mail
    dklein@seyfarth.com

World Trade Center East

Two Seaport Lane

Suite 300

Boston, MA  02210-2028

617-946-4800

fax 617-946-4801

www.seyfarth.com

May 5, 2005

**By Federal Express**

John R. Williams, Esq.
John R. Williams & Associates LLC
51 Elm Street, Suite 409
New Haven, CT  06510

      *Re:*    *Bennett v. Accenture LLP*; C.A. No. 3:03CV0080 (AVC)

Dear Attorney Williams:

      As you may recall, during our conversations concerning our Joint Motion to Continue the Trial Date in the above-referenced matter, I alluded to the current health of Accenture's key witness, Michelle Holt. As you may recall, Ms. Holt was the EEO Officer who attempted to locate a position for Mr. Bennett in 2001 within his restrictions, and she communicated with him regarding her unsuccessful efforts. Without disclosing too many details of her medical condition and with the understanding that this will remain confidential under the circumstances, we wanted you to know that Ms. Holt has ▮▮▮▮▮ and it has reached a grave state. We only learned this after contacting our client immediately after the Court notified the parties of the initial trial date. Our client did not know that her condition had reached this grave state until approximately one week prior. Nevertheless, Ms. Holt will be unable to testify at trial or even at a deposition.

      In lieu of Ms. Holt's live testimony at trial, pursuant to Rule 807 of the Federal Rules of Evidence, we will be moving for the admission of Ms. Holt's Affidavit, which we initially provided to your offices on or about February 24, 2004 with the Defendant's Motion for Summary Judgment. As you can see from a review of your client's deposition transcript (pp. 116 – 138), Mr. Bennett acknowledged and maintained notes from multiple conversations with Ms. Holt concerning her efforts to find him an available position at Accenture in 2001. Mr. Bennett testified that he did not have reason to believe that she was lying to him. Moreover, in Plaintiff's Rule 56(a)(2) Statement of Material Facts in Dispute, Plaintiff agreed to the facts asserted by Defendant concerning Ms. Holt's efforts to locate a position for Mr. Bennett.

BRUSSELS

WASHINGTON, D.C.

SAN FRANCISCO

SACRAMENTO

NEW YORK

LOS ANGELES

HOUSTON

CHICAGO

BOSTON

ATLANTA



Accordingly, please let us know whether, under the circumstances, Plaintiff will stipulate to our motion to admit Ms. Holt's Affidavit.  If not, please let us know if Plaintiff can at least stipulate to certain paragraphs of Ms. Holt's Affidavit.  To that end, enclosed please find a courtesy copy of Ms. Holt's Affidavit.

Thank you for your consideration and cooperation under the circumstances.  We look forward to hearing from you.

Sincerely,

SEYFARTH SHAW LLP

Daniel B. Klein

Enclosure

cc:    Lynn A. Kappelman, Esq.

EXHIBIT C

1      U.S. DISTRICT COURT

2       DISTRICT OF CONNECTICUT

3   TODD BENNETT              CIVIL ACTION NO.
              Plaintiff      3:03CV0080AVC
4        VS.

5   ACCENTURE, LLP           AUGUST 29, 2003
              Defendants

6

7            DEPOSITION OF TODD BENNETT

8                                          COPY

9   APPEARANCES:

10      FOR THE PLAINTIFF:
            WILLIAMS And PATTIS, LLC
11             51 Elm Street, Suite 409
            New Haven, Connecticut 06510
12      BY:  TIMOTHY J. MAHONEY, ESQ. (203-562-9931)

13
        FOR THE DEFENDANT (LOCAL COUNSEL):
14          ZELDES, NEEDLE & COOPER
               1000 Lafayette Boulevard
15          Bridgeport, Connecticut 06604
            BY:  DOUGLAS VARGAS, ESQ. (203-333-1489)
16          (Not Present)

17      FOR THE DEFENDANTS, ACCENTURE, LLP:
            LAW OFFICES OF SEYFARTH SHAW, LLP
18             Two Seaport Lane, Suite 300
            Boston, Massachusetts 02210
19          BY:  LYNN A. KAPPELMAN, ESQ. (Ct.)13480
               (617-946-4800)

20      ALSO PRESENT:
21          Geomatrix Productions, Matt DeGennaro.

22              ALEEN M. STANTON, CLSR, #00196

23
      NIZIANKIEWICZ & MILLER REPORTING SERVICES
24             972 Tolland Street
      East Hartford, Connecticut 06108-1533
25             (860) 291-9191

1                    . . . Deposition of **TODD BENNETT**,

2       Plaintiff, taken on behalf of the Defendants,

3       **Accenture, LLP**, in the hereinbefore entitled action

4       pursuant to Rules 26 and 30 of the Federal Rules of

5       Civil Procedure of the Connecticut Practice Book and

6       the videotape deposition videotaped pursuant to Rule

7       30(b)(2) of the Federal Rules of Civil Procedure of the

8       Connecticut Practice Book, before Aleen M. Stanton,

9       CLSR and Notary Public, at the Law Offices of Zeldes,

10      Needle & Cooper, 1000 Lafayette Boulevard, Bridgeport,

11      Connecticut 06604, commencing at approximately

12      9:30 p.m., on Friday, August 29, 2003.

13

14                        STIPULATIONS

15

16          It is hereby stipulated and agreed by and
        among counsel for the respective parties that all
        formalities in connection with the taking of this
17      deposition, including time, place, sufficiency of
        notice and the authority of the officer before
18      whom it is being taken may be and are hereby
        waived.
19
            It is further stipulated and agreed that
20      objections, other than as to form, are reserved to
        the time of trial and that the reading and signing
21      of the deposition **is not waived and that the
        deposition may be signed before any** Notary public.
22
            It is further stipulated and agreed that the
23      proof of the qualifications of the notary public
        before whom the deposition is being taken is
24      hereby waived.

25

1    work?

2         A    To the best of my knowledge, it was the

3    January 31st date indicated.

4         Q    And do you know who you spoke to?

5         A    Michelle Holt.

6         Q    Do you know what her title was at Accenture

7    then?

8         A    I do not know.

9         Q    And how did you know who to contact when you

10    wanted to come back?

11        A    I think I contacted her first because she had

12    been involved in staffing previously and I didn't know

13    if she would be the right person, but it seemed like a

14    good place to start.

15        Q    And what did you say to her and what did she

16    say to you during that first conversation that you had

17    with her in January of '01?

18        A    As you see my notes are incomplete for that

19    conversation, but to the best of my recollection, I

20    informed her where I stood in terms of my recovery, the

21    fact that I had been cleared to work or at least maybe

22    not in written fashion to Accenture, but verbally

23    cleared to work by my doctors that I had every interest

24    and intention of resuming my career with Accenture.

25        Q    And in your notes it says, "HR team note from

1    you were willing to work?

2    A    That's what my doctors initially recommended

3    and that's what the original work release to Accenture

4    suggested.

5    Q    So do you recall it's got three dates here,

6    "Michelle Holt, January 31 '01, 2-14-01 and 2-22-01,"

7    are those the dates of your conversations with Michelle

8    about returning?

9    A    I believe they are.

10    Q    And during those conversations do you recall

11    telling her that your doctor said you could come back

12    to work as long as you could park near the building and

13    not have to travel beyond the Hartford/Springfield

14    area, work Monday, Wednesday and Friday from nine to

15    twelve in a quiet environment?

16    A    I do recall telling her that, yes.

17    Q    So that was what she was charged with,

18    finding you a job with those restrictions?

19    A    That was and please understand that that

20    changed over time as I recovered and I was later on

21    cleared to work five days a week, four hours a day.

22    MS. KAPPELMAN:  I'd like to ask the

23    court reporter to mark this as the next

24    exhibit, please?

25    (Whereupon, the referred to

1          document was Marked For Identification as

2          Defendant's Exhibit No. 20).

3     BY MS. KAPPELMAN:

4          Q    So she asked you to get a letter from your

5     doctor saying that stuff, right?

6          A    That was a condition of my return to work,

7     yes.

8          Q    Okay.  Directing your attention to what we've

9     marked as Exhibit 20 for your deposition, can you

10    identify that document for the record, please?

11         A    This appears to be my clearance to return to

12    work from Dr. Gerald Kaplan at Gaylord to Paula Miller

13    at the Benefit Center of Accenture.

14         Q    And this was a letter that your doctor sent

15    explaining the restrictions on your return to work

16    correct?

17         A    Yes, this is the letter that Accenture had

18    requested and if I recall there was some back and forth

19    in terms of both sides trying to get and state the

20    information that they required, but I believe this is

21    the result of that effort.

22         Q    Okay.  So what the doctor says here is that

23    you can work "three hours a day, three days a week, and

24    then increase to four hours a day, three days a week,"

25    and you are supposed to work "Monday, Wednesday and

1    Friday 9:00 a.m. to noon," right; is that what that

2    letter says?

3         A    I'm just reviewing it.  That's correct.

4         Q    It also says you are only supposed to be

5    assigned to your home office and not sent to other

6    locations until you are reassessed, right, and that you

7    be set up in an office that minimizes possible

8    distractions?

9         A    That's what it says.  The reference to home

10   office I think is a bit -- a bit misleading in that it

11   implies just the One Financial Plaza office as opposed

12   to the Hartford/Springfield area.

13        Q    And did you talk to Michelle Holt after she

14   received this letter?

15        A    I believe I did, yes.

16        Q    And what did she say to you and what did you

17   say to her about these restrictions?

18        A    I recall discussing them with her and her

19   understanding and agreement that this is what -- what

20   the doctors were recommending for me.

21        Q    Did she mention to you during this period of

22   time that the company was going through a reduction in

23   force?

24        A    I don't recall.

25        Q    Did she mention to you that the company,