UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD BENNETT, <br><br> Plaintiff, <br><br> v. <br><br> ACCENTURE LLP, <br><br> Defendant. | Civil Action No. 3:03CV0080 AVC <br><br><br> August 5, 2005 |

**DEFENDANT'S MOTION IN LIMINE TO**
**ADMIT MEMORANDUM AT TRIAL**

Pursuant to Rules 803(6) and 807 of the Federal Rules of Evidence ("Rule 807"), the Defendant, Accenture LLP ("Defendant" or "Accenture"), hereby respectfully moves this Court, in limine, to admit a Memorandum prepared by the late Michele Holt ("Ms. Holt") and Employee Relations Manager Toni Corban (the "Memorandum") into evidence at trial in the above-captioned action. The Memorandum is attached hereto as Exhibit A.

Ms. Holt, who passed away on June 9, 2005, was Accenture's primary witness in this matter. In support of this Motion, Defendant submits herewith a memorandum in support.

**ORAL ARGUMENT REQUESTED**

WHEREFORE, Defendant respectfully requests that this Court admit the Memorandum pursuant to Rules 803(6) and 807. Alternatively, Defendant requests that the Court allow Defendant to highlight the portions of the Memorandum to which Plaintiff already has admitted and agreed in his Rule 56(a)(2) Statement of Material Facts in Dispute, and that the Court admit such portions as stipulated facts.

Respectfully submitted,

**DEFENDANT**
**ACCENTURE LLP**

By its Attorneys,

By _____
Lynn A. Kappelman (ct 03480)
lkappelman@seyfarth.com
Daniel B. Klein (ct 18934)
dklein@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
Fax: (617) 946-4801

Defendant's Local Counsel:
Douglas Varga, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd.
Bridgeport, CT 06604

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2005, a copy of the foregoing document was sent by overnight delivery to John R. Williams, Esq., John R. Williams & Associates LLC, 51 Elm Street, Suite 409, New Haven, CT 06510.

_____
Daniel B. Klein

2

EXHIBIT A

## Todd Bennett Overview

### Background Information

Todd Bennett went out on Long-term disability LOA in July 1997. At that time, the Accenture's organization was location based. Todd was an experienced consultant in the Hartford office. During the time that Todd was out on leave, Accenture had several organizational changes and went to an industry-focused (Market Unit) organization in the spring of 2000. Since Todd did not belong to an industry before his leave of absence; when the organization transitioned, Todd was not placed in an organization. Todd continued to be aligned with the Hartford office.

In addition, Accenture's economic situation changed starting in the spring of 2001. As a result, Accenture went through a series of workforce reductions as well as a hiring freeze and offering Flex Leave.

### Pertinent Information Prior to going on LTD

Personnel #: 000054941
Date of Hire: 8/17/92
Level: Experienced Consultant
Last Date of Promotion: September 1, 1994
Last Rating before leave of absence: Outstanding
Organization: Technology Competency Group
Office: Hartford office
Date of STD: 4/7/97
Date of LTD: 7/7/97

### Chronology of events pertaining to Todd Bennett's request to return to work

**1/31/2001** - Todd called Michele Holt, EEO Officer in Hartford to let her know he was released to return to work on a modified schedule. Michele told Todd she would look into what next steps were and would get back to him.

**Jan/February 01** - Michele asked Todd to provide us with medical document regarding his return. Todd requested that Accenture send a written request directly to his doctor.

**2/28/01** – Paula Miller, Accenture Benefits, sent request to Todd's doctor asking for return to work date, restrictions surrounding return, if any, and timeframe of outlined restrictions.

**3/5/01** – Paula Miller received document from Todd's doctor, indicating he was released to return to work as of 3/12/01, restrictions were as follows:

*Work 3 hours per day, 3 days per week for first two weeks and increase to 4 hours per day, 3 days per week for next two weeks. Continue at that level until re-evaluated. Suggestion from doctor 9-12 pm, Monday, Wednesday, Friday. Assigned to home office and not be sent to other locations until reassessed. Set up in office with minimal distractions. Should have parking available at his office.*

Michele Holt started reviewing possible roles/organizations for Todd. Michele spoke with Market Units with projects in Hartford. Michele explained to Todd that we needed to find him a MU to transfer to and role, since when he went on leave he was not aligned to a Market Unit.

**March 2001 – August 2001** – Michele made the following inquiries:

- Spoke with Andrew Burns, PM Rep for Resources MU in Hartford, no Hartford Resources projects were available
- Spoke with Amy Salvatore, PM Rep for Communications MU in Hartford, no CHT projects in Hartford were available
- Spoke with Olga Conway, PM Rep for Financial Services MU in Hartford, no opportunities at FS projects in Hartford were available
- Spoke with Hilary McCracken, PM Rep for Health Services MU in Hartford, no opportunities at Health projects in Hartford were available
- Spoke with Tara Parisi, PM Rep for Government MU in Hartford. On June 1, 2001, Todd attended a Hartford Government Market Unit Meeting and spoke with Mark Raymond, Government AP regarding a potential opportunity. The Government project in Hartford area could only bring on Peoplesoft skilled individuals, Todd did not possess Peoplesoft skill set
- Spoke to Marty Strong regarding Quality Client Survey Team. Business Practices had a headcount freeze and could not hire or transfer into their group.

Accenture 0489

In addition, Michele met with Location Lead Partner, Marty Cole to discuss finding Todd a role. Unfortunately, no opportunities were available for Todd. At this time, many of the Market Units were going through reductions as well as offering Flex Leave to manage an oversupply of resources.

In August, due to the state of Accenture's business (refer to background information) and the inability to locate a role for Todd to return to, the decision was made to terminate Todd's employment. Before communicating this to Todd, questions surrounding how termination would impact his LTD benefits were researched.

**August 01** – Todd updated Michele that his restrictions had been changed. We did not receive updated physician's note.

**8/21/01** – Aetna responded that Todd would continue to receive full LTD benefits. Although his medical information indicated he may be capable of PT work, he has not resumed work on a part time basis and is therefore eligible to continue to receive his full benefit.

**11/7/01** – Michele called Todd Bennett, he was unavailable and Michele spoke with his wife, Amy. Todd's wife indicated that she and Todd have come to the conclusion we do not have a position for him. They had questions, would like to speak about them.

**11/8/01** – Michele spoke with Todd Bennett and his wife regarding his termination. She explained that we unfortunately could not locate a role for him and cannot return him from leave. They had the following questions:
1. Will Todd receive a pink slip? They stated at some point he will be released to return to work and would like to qualify for unemployment benefits.
2. Would like copy of his personnel file
3. Would like in writing that his LTD benefits will not be impacted.
4. What happens to his eUnits and RSUs?
5. What type of documentation will he receive? Would like a copy of the Summary of 401K plan and how termination will affect his benefits.
6. Will he receive severance? Michele indicated he would not and he questioned this. Given good employment record, he wondered why he wouldn't get this. Feels it will be very difficult to enter the workforce on PT basis and is upset that others that were laid off or asked to leave got severance. Michele explained that his termination was not part of a layoff. Todd still felt he should get severance. Michele explained that our practice is not to give individuals returning from LTD leave severance. Todd's wife asked if Todd was not being returned because of our reductions, why would he not receive severance. Michele explained that Todd was not being terminated due to reductions, but because we do not have a role for him.
7. Todd asked if Accenture has let go other individuals on LTD. Michele advised him that we have, but she did not have specific information, as each case was different. She let him know it is not our practice to give job search/severance to individuals returning from LTD.
8. Todd asked why we were letting him go since he isn't costing us anything. Michele stated he was released to return and we did not have a role now or in the foreseeable future for him to return to.

Michele advised Todd that she would look into his questions and get back to him. Todd asked that he not be terminated until he received all the answers to his questions, Michele said that she would do this.

As per Toni's request, Pete Zackrison provided clarification of getting something in writing related to LTD benefits and Plan Summary of 401K.

**11/20/01** – Michele started looking into RSU/EUnit questions with the Global Share Plan group.

**1/10/02** – Michele spoke with Todd. He let her know he hasn't received the Plan Summary of 401K. He also asked for all the answers to his questions in writing.

Todd and Michele discussed:
1. Letter of termination and impact on benefits.
2. Can Todd get clarification on EUnits and RSUs?
3. Plan Summary of 401K, did not receive yet.
4. Pink Slip, when will he receive?
5. Written notification that LTD benefits are not impacted by termination.
6. When does COBRA kick in? Michele advised Todd that COBRA would kick in upon his termination being processed through our payroll system.
7. Can he receive unemployment? Determination would be up to the State of Connecticut.

Accenture 0490

TC f/u'd with PZ and asked him to re-send 401K Summary. Michele received note from Global Share Plans that Todd would be not eligible to get RSUs because he never returned to active status.

Todd left Michele a message stating he wants to revisit severance.

**1/15/02** – Michele followed up with Heather Swanberg from Global Share Plans re Todd. Heather indicated LTD and RSUs were being reviewed at this time.

Michele received note from Patricia Boepple from Global Share Plans. She indicated that if Todd was on LTD, and is now being terminated then he would qualify under the grant agreements as being "Terminated due to Disability" and would be eligible to have his RSU release accelerated. We still needed to work on obtaining determination of how they would be paid and when.

**January 02 - March 02** – Michele followed up to get clarification regarding RSUs.

**2/5/02** – Michele spoke with Todd, he wanted to revisit severance. Todd advised Michele that Aetna will re-evaluate him at 5 year mark (7/7/02), and he feels we should provide severance. Todd requested LTD information in writing and how termination would affect his benefits on LTD.

TC sent note to Peter Zackrison re statement in writing regarding his LTD benefits. Peter sent note to Aetna for clarification.

**2/6/02** – Sent follow up letter to Todd outlining requested information status. Provided copy of Personnel File, as requested and how termination affects your benefits document. Indicated we were waiting for clarification of RSUs/E-units, when he could expect his unemployment notification (pink slip) who his contact at Aetna was to discuss LTD questions and that his Summary of 401K would be sent under separate cover.

**2/25/02** – Michele received information from Global Share Plans that Todd would receive RSUs, but Global Share Plans could not give us information regarding the payout timing. Advised Michele it would take them 6-8 weeks.

**3/8/02** – Michele spoke with Todd. Explained that he will receive RSUs, but we do not have date of when he will be paid out. Todd asked about severance and Michele advised him it was escalated and he will not receive severance.

Todd asked the following questions:
1. Can Michele speak to Aetna and let them know that we couldn't return him PT, because he didn't have a position?
2. Todd expressed that he was disappointed that he was notified of his termination in November and he does not have all the answers to his questions and is not terminated. He asked that given his 5 year review is currently going on with Aetna, can Accenture hold off on processing his termination until this review is complete?

Michele told Todd she would look into both questions and get back to him. Michele sent follow up to Global Share Plans re RSUs, TC sent note to Peter Zackrison re Aetna. Michele left voice mail message for Aetna Representative, Carrie Jo Peters.

**3/12/02** – Michele spoke with Todd and let him know that his termination date will be after his RSU payout question has been answered.

**3/19/02** – Michele spoke with Todd. He asked Michele to have Accenture write a letter to Aetna on his behalf to plead his case. TC spoke with PZ, responded that Accenture cannot comment on his condition, but can let Aetna know that we do not have a role to return him to. Michele spoke with Aetna representative (Carrie Jo Peters); Todd's case is in medical review. The representative told Michele that Todd volunteers 20 hours per week. Michele asked the Representative if any information or documentation was needed to support Todd's case, Representative indicated that Accenture does not need to provide anything.

**March 2002** – Todd called Michele to discuss if a letter was sent to Aetna on his behalf. Michele indicated that she talked to Carrie Jo Peters and they required no information from Accenture. Todd wanted Accenture to send a letter on his behalf, as was done in the past. Todd asked Michele if Accenture could postpone his termination while his case was being reviewed by Aetna. Michele told Todd that she would do what she can regarding this request.

Currently – Todd's termination has not been processed.

Accenture 0491